KATHERINE C. KENNEDY, PLAINTIFF v. GUILFORD TECHNICAL COMMUNITY COLLEGE, DEFENDANT

No. 9318SC444

(Filed 19 July 1994)

**Public Officers and Employees § 58 (NCI4th)— "whistleblower" action—job transfer—prima facie case—legitimate reason shown by defendant—no discrediting evidence by plaintiff—summary judgment for defendant**

Assuming that plaintiff's transfer to a secretarial position she considered less attractive than her former secretarial position following her protected activity of reporting employee misuse or misappropriation of state property established a *prima facie* showing of discrimination in her employment in violation of the "whistleblower" statutes, N.C.G.S. §§ 126-84 and 126-85, the trial court properly entered summary judgment for defendant technical college where defendant presented evidence that plaintiff's transfer had no effect on her hours, wages, seniority, or benefits, the job descriptions for the two positions were almost identical, plaintiff's transfer was an integral part of a larger reorganization

plan, and plaintiff's former position was permanently eliminated, and plaintiff presented no specific facts tending to discredit defendant's reorganization claim or to show that the legitimate reason offered by defendant was not its true reason but was a pretext for discrimination.

**Am Jur 2d, Wrongful Discharge §§ 55 et seq.**

**Liability for discharging at-will employee for refusing to participate in, or for disclosing, unlawful or unethical acts of employer or coemployees. 9 ALR4th 329.**

Appeal by plaintiff from summary judgment entered 12 March. 1993 by Judge Thomas W. Ross in Guilford County Superior Court. Heard in the Court of Appeals 7 February 1994.

*Smith, Follin & James, by Norman B. Smith and Margaret Rowlett, for plaintiff-appellant.*

*Hendrick, Zotian, Bennett & Blancato, by William A. Blancato, for defendant-appellee.*

JOHN, Judge.

Plaintiff-employee filed an amended complaint in this action on 16 April 1992, claiming retaliation in violation of N.C. Gen. Stat. § 126-85 by defendant-employer following her reports of fellow-employee misuse and misappropriation of audio-visual (AV) equipment. In sum, plaintiff's complaint stated that after she informed supervisory and investigatory personnel at defendant Guilford Technical Community College (GTCC) of employee personal use of State equipment and of State property missing from inventory, she was transferred from her position as "Audio-Visual Secretary" (AV secretary) to the position of "Library Public and Technical Services Secretary." Plaintiff initiated her suit after unsuccessfully seeking reinstatement as AV secretary by means of an internal grievance procedure pursued with GTCC in the fall of 1991. From entry of summary judgment in favor of defendant on 12 March 1993, plaintiff appeals. We affirm the trial court.

This action was brought under North Carolina's "whistleblower" statutes, N.C. Gen. Stat. § 126-84 (1993), and N.C. Gen. Stat. § 126-85 (1993), which provide in pertinent part as follows:

## § 126-84. Statement of policy.

It is the policy of this State that State employees shall be encouraged to report verbally or in writing to their supervisor, department head, or other appropriate authority, evidence of activity by a State agency or State employee constituting:

(1) A violation of State or federal law, rule or regulation;

(2) Fraud;

(3) Misappropriation of State resources; or

(4) Substantial and specific danger to the public health and safety.

## § 126-85. Protection from retaliation.

(a) No head of any State department, agency or institution or other State employee exercising supervisory authority shall discharge, threaten *or otherwise discriminate against a State employee regarding the State employee's compensation, terms, conditions, location, or privileges of employment* because the State employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, any activity described in G.S. 126-84, unless the State employee knows or has reason to believe that the report is inaccurate.

(Emphasis added).

A court ruling upon a motion for summary judgment must view all the evidence in the light most favorable to the nonmovant (here, plaintiff), *see, e.g., Durham v. Vine,* 40 N.C. App. 564, 566, 253 S.E.2d 316, 318-19 (1979), *overruled in part on other grounds, Roumillat v. Simplistic Enterprises, Inc.,* 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992), accepting all her asserted facts as true, *Railway Co. v. Werner Industries,* 286 N.C. 89, 98, 209 S.E.2d 734, 739 (1974) (citation omitted), and drawing all reasonable inferences in her favor. *Whitley v. Cubberly,* 24 N.C. App. 204, 207, 210 S.E.2d 289, 291 (1974) (citations omitted). However, once the moving party presents an adequately supported motion, the opposing party must come forward with specific facts (not mere allegations or speculation) that controvert the facts set forth in the movant's evidentiary forecast. *Roumillat,* 331 N.C. at 63-64, 414 S.E.2d at 342; *Moore v. Fieldcrest Mills,* 36 N.C. App. 350, 353, 244 S.E.2d 208, 210 (1978), *aff'd,* 296 N.C. 467, 251 S.E.2d 419 (1979); *see also* N.C.R. Civ. P. 56(e) (1990), which provides in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. *If he does not so respond, summary judgment, if appropriate, shall be entered against him.*

(Emphasis added).

Both parties correctly point out that our courts have issued no published decisions interpreting or applying G.S. §§ 126-84 and 126-85. Thus the question of whether the general principles just enunciated are applicable to actions commenced under these statutes has not been definitively answered. However, the parties direct our attention to related cases involving discrimination and retaliation claims brought under 42 U.S.C. §§ 2000e *et seq.* (Title VII) and 42 U.S.C. § 1983 (Section 1983) and suggest our analysis of the case *sub judice* should follow that utilized by courts in considering Title VII and Section 1983 claims. Noting that the procedures adopted by courts in these cases closely parallel the customary summary judgment analysis set out above, we elect for purposes of this appeal to adopt the parties' recommended reasoning.

Plaintiff relies upon a decision from the federal court for the principle that a *prima facie* case of retaliation (based upon a violation of first amendment rights) in "whistle-blowing" circumstances is properly considered composed of the following elements: "(1) [plaintiff] engaged in protected activity, (2) followed by an adverse employment action, and (3) the protected conduct was a substantial or motivating factor in the adverse action." *McCauley v. Greensboro City Bd. of Educ.*, 714 F. Supp. 146, 151 (M.D.N.C. 1987) (citations omitted) (plaintiff claimed she was retaliated against, in violation of Title VII and 42 U.S.C. § 1981 and § 1983, for filing race and sex discrimination charges with the E.E.O.C.). The *McCauley* court then observed that although "[t]he analysis for retaliatory acts which violate . . . Title VII is similar, . . . the Plaintiff must prove 'but for' instead of 'motivating factor' causation in her *prima facie* case." *Id.* (citation omitted).

The case cited by plaintiff continues by stating that upon presentation of a *prima facie* case of retaliation based upon first amendment rights, "the burden shifts to the defendant to show that it would have taken the same action even in the absence of the protected conduct." *Id.* at 153. Stated otherwise, "the burden of production shifts to

the defendant to articulate a legitimate, non-discriminatory reason for the adverse [employment] action." *Melchi v. Burns Int'l Sec. Servs. Inc.*, 597 F. Supp. 575, 582 (E.D. Mich. 1984) (construing Michigan's "Whistleblowers' Protection Act"); *see also Heerdink v. Amoco Oil Co.*, 919 F.2d 1256, 1260 (7th Cir. 1990), *cert. denied*, 501 U.S. 1217, 115 L.Ed.2d 996 (1991). An articulated reason is not "legitimate," and so does not overcome the presumption of discrimination arising from plaintiff's *prima facie* showing, unless it has "a rational connection with the business goal of securing a competent and trustworthy work force." *Harris v. Marsh*, 679 F. Supp. 1204, 1285 (E.D.N.C. 1987), *aff'd in part, rev'd in part on other grounds by Blue v. U.S. Dept. of Army*, 914 F.2d 525 (4th. Cir. 1990).

Finally, if the defendant-employer meets its burden, the plaintiff must then come forward with evidence to show "that the legitimate reason was a mere pretext for the retaliatory action." *Melchi*, 597 F. Supp. at 582 (relying on language from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 36 L.Ed.2d 668, 679 (1973)); thus, "a plaintiff retains the ultimate burden of proving that the [adverse employment action] would not have occurred had there been no protected activity" engaged in by the plaintiff. *Id.* at 583. Courts have referred to this as requiring a showing by plaintiff of "but-for" causation, *id.*, creating an affirmative obligation on plaintiff's part to produce evidence countering that produced by the employer on its motion for summary judgment. Furthermore, if at that point "plaintiff has no evidence whatsoever of pretext, the continued litigation of plaintiff's case can be frivolous despite the existence of a *prima facie* case." *Blue v. U.S. Dept. of Army*, 914 F.2d 525, 536 (4th Cir. 1990) (citation omitted).

We begin our analysis of the case *sub judice* by assuming *arguendo* (but explicitly not deciding) that when viewed in the light most favorable to plaintiff, the evidence before the trial court established a *prima facie* case of discrimination with respect to conditions of plaintiff's employment in retaliation for having engaged in the protected activity of reporting employee misuse or misappropriation of State property. In this context, however, we note parenthetically defendant's strong arguments against consideration of plaintiff's transfer to a secretarial position in the Learning Resources Center's library as "discrimination" with respect to her compensation, terms, conditions, location or privileges of employment. *See* G.S. § 126-85. GTCC emphasizes uncontested evidence demonstrating that plaintiff's transfer had no effect on her hours, her wages, her seniority, or her privileges and benefits, and only minimal impact on her location

(requiring a move from third to first floor), and that the written job description for her new secretarial position was virtually identical to the description for her former one.

Defendant further counters plaintiff's suggestion that the transfer interrupted a "reclassification" of her former job which had been in progress for some time by pointing out she was unable to offer any evidence supporting that assertion. For instance, defendant continues, she presented no factual information establishing that her desired reclassification had been approved by the appropriate personnel, that funding for it was or would ever be available, or that being transferred would necessarily have an adverse effect upon any decision made about the reclassification.

Furthermore, plaintiff stated she was primarily dissatisfied with her new job because she perceived it manifested less responsibility and she felt "isolated" and "bored." However, GTCC observes that she had worked fewer than three weeks when she requested a transfer to another department, and during that time she was in the process of being trained. Moreover, she began her work in the library during the "slow" period when school was not in session.

Finally, defendant argues it is uncontroverted that secretarial help was greatly needed in the library, and that within time and after training plaintiff would have been given a broader range of responsibilities there. On the other hand, the duties she had performed as the part-time AV secretary had been divided among student workers and another employee, and the job itself eliminated following her departure therefrom.

Nonetheless, assuming *arguendo* plaintiff's transfer to a position she considered less attractive following reports to college authorities of employee misconduct constituted a *prima facie* showing of "discrimination," we proceed to an examination of defendant's evidence presented to the trial court.

Defendant moved for summary judgment pursuant to Rule 56 on 12 February 1993, and supported its motion with numerous affidavits as well as various attached memoranda. Included was the affidavit of Beverley Gass (Gass), current Dean and former Director of the Learning Resources Center (the LRC), which houses the AV department as well as the library and the Office of the Director of Education and Faculty/Staff Development. Other affidavits presented were those of Scott Burnette (Burnette), lead technician of the AV department, and

Dr. Delores Parker (Dr. Parker), Vice-President for Academic Affairs and Student Development at GTCC, as well as Randy Candelaria (Candelaria) and Martha Davis (Davis), GTCC librarians. Defendant's materials established that plaintiff's transfer to the library was part of a campus-wide reorganization, which directly affected the LRC in numerous respects.

Considered cumulatively, defendant's affidavits show the following: In the beginning of 1991, Lundee Amos (Amos) was the Director of Education and Faculty/Staff Development; in the summer of 1991, she was appointed to the position of Dean of GTCC's Greensboro campus. On 1 August 1991, Robin Brewington (Brewington) became the Director of Educational Development (part of the LRC staff); in that role, Brewington assumed many of Amos' earlier duties. Marlene Matthews (Matthews) had been Amos' secretary before the latter became Dean, and since Amos' former responsibilities had been given to a person working within the LRC, Matthews was also transferred to the LRC. Matthews is a full-time secretary with a ten-month contract of employment.

With the transfer of Matthews, the LRC had three secretaries on staff—Betty Jones (Jones, Gass' personal secretary), plaintiff, and Matthews. Plaintiff and Jones both worked on the third floor, where Brewington's office was also located. Because Matthews was familiar with much of the work that had been assigned to Brewington upon Amos' promotion, Brewington strongly desired that Matthews function as her secretary. Accommodating that wish meant that Matthews would also be situated on the third floor of the LRC.

At that time, Gass began discussing the most efficient allocation of secretarial resources with various department heads of the LRC—in particular, Brewington and the LRC's two librarians, Candelaria and Davis. Candelaria and Davis had been in need of secretarial assistance for several months, and occasionally asked Jones for help. However, as even plaintiff conceded in her deposition, because Gass herself had recently been promoted to Dean of the LRC, Jones was "swamped" with work, making reliance on her impractical. Gass first suggested the creation of a "secretarial pool" for the entire LRC building, but as Brewington wanted closer personal assistance from Matthews, this idea was not acceptable.

Ultimately, Gass decided that Matthews would be situated on the third floor and assigned to Brewington; in addition, she would be available to perform secretarial tasks for the AV department should

the need arise. Jones was to continue as Gass' personal secretary, also remaining on the third floor. Plaintiff was transferred to the first-floor library to provide secretarial services for the librarians. The job of AV secretary was thereafter eliminated and not re-established, plaintiff's former duties having been parcelled out and assigned to others. However, the job description for the newly created secretarial position (Library Public and Technical Services Secretary) was virtually identical to that of the AV secretary.

Included with Dr. Parker's affidavit was a copy of GTCC's policy regarding reorganization, which provides:

> The President reserves the right to make changes in job status through reorganization or reassignment of personnel (includes promotion and transfers . . . as defined in procedures). All other promotions or transfers of employees will be considered upon request initiated by the employee or appropriate supervisory personnel.

Dr. Parker elaborated by noting that each department's dean has the right to "reassign or reorganize" clerical personnel (such as secretaries) within his or her department. Thus, it was Gass' discretionary duty to decide where to place each secretary within the LRC. Dr. Parker approved plaintiff's transfer after "full investigat[ion]," because "in [her] opinion it was the most efficient allocation of resources within the LRC." Furthermore, Dr. Parker found there to be "no need to reestablish the position [of AV secretary] and it would be inefficient to do so."

Candelaria and Davis both indicated that because no classes were held in August, it was a "slow" month in the library. Nonetheless, secretarial help was greatly needed, and they were in the process of training plaintiff for further duties when she sought a transfer to the Guided Studies department. During the few weeks plaintiff was in the library, she occupied the same office space Jones had when serving as Gass' secretary before they both relocated to the third floor in 1988. This area was connected to Candelaria's (plaintiff's new supervisor's) office.

We hold defendant met its burden of countering any *prima facie* showing of plaintiff by establishing a "legitimate explanation for the challenged action," *Carr v. F.W. Woolworth Co.*, No. 91-541-CIV-5-BO, slip op. at 9 (E.D.N.C. Sept. 23, 1992)—specifically, that plaintiff's transfer to the LRC library was an integral part of a larger reorgani-

zation plan, well within the realm of Gass' discretionary power to make assignments for the secretarial personnel working at the LRC.

In response to defendant's well-supported motion, plaintiff offered nothing more than speculation regarding her supervisors' motives. She presented no specific facts tending to discredit defendant's reorganization claim or to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Melchi*, 597 F. Supp. at 582 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 67 L.Ed.2d 207, 215 (1981)). Indeed, in her deposition testimony, she acknowledged the verity of all the factual information presented in the affidavits submitted by defendant regarding the appointments, relocations, and resultant work loads of various staff and faculty members.

Plaintiff produced no factual information tending to refute defendant's contention that her transfer was simply a sensible managerial decision, or to show that it was instead the result of retaliation for her "whistleblowing" activities in the AV department. The only evidence offered by plaintiff arguably supporting her assertion of retaliation was deposition testimony of Brewington to the effect that Gass and Burnette had said they wanted plaintiff out of the AV department. Upon further inquiry therein, however, Brewington's responses indicated those comments were reflective of personality conflicts between plaintiff and her co-workers; Brewington did not believe the statements were connected in any way with a desire to retaliate against plaintiff for reporting misuse or misappropriation of AV equipment.

Accordingly, we hold that defendant's motion for summary judgment was amply supported by evidence establishing a legitimate reason for plaintiff's transfer to a substantially similar job in the LRC. Plaintiff then failed to meet her burden of coming forward with a showing that defendant's stated reasons were simply a pretext for discrimination. *Blaine v. Whirlpool Corp.*, 891 F.2d 203, 204-05 (8th Cir. 1989). The trial court thus properly granted summary judgment in favor of defendant in the circumstances of this case. *See* Rule 56(e).

Affirmed.

Judges WELLS and McCRODDEN concur.

Judge Wells concurred prior to 30 June 1994.