PAMELA STAMPER, Plaintiff v. CHARLOTTE-MECKLENBURG BOARD OF
EDUCATION, A Body Politic, Defendant

No. COA00-436

(Filed 17 April 2001)

## Emotional Distress— intentional infliction—conduct not suffi-ciently extreme and outrageous

The trial court did not err by granting summary judgment in favor of defendant board of education on plaintiff teacher's claim for intentional infliction of emotional distress, because: (1) plaintiff has not shown defendant's conduct was sufficiently extreme and outrageous when her evidence shows defendant was following its procedures for evaluating and eliminating problematic teachers; and (2) even assuming various school personnel went through·these motions in bad faith based on personal animosity toward plaintiff, their conduct did not go beyond all possible bounds of decency.

Appeal by plaintiff from judgment entered 17 December 1999 by Judge John M. Gardner in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 March 2001.

*Roger W. Rizk, P.A., by Roger W. Rizk, for plaintiff-appellant.*

*Smith, Helms, Mulliss & Moore, L.L.P., by James G. Middlebrooks, John G. McDonald, and T. Jonathan Adams, for defendant-appellee.*

HUDSON, Judge.

Plaintiff appeals from the trial court's grant of summary judgment to defendant on plaintiff's claim for intentional infliction of emotional distress. We affirm the trial court.

In her complaint and in a supporting affidavit, plaintiff alleged the following: she served for many years as an exemplary teacher with

the Charlotte-Mecklenburg Schools. However, in the fall of 1996, when plaintiff gave a student a B in a math class, the student's parent complained to the school's assistant principal, Linda Kiser (Kiser), who was a friend of the parent. Following this incident, there was a change in attitude toward plaintiff on the part of Kiser, and plaintiff was subjected to a hostile atmosphere at work.

In November 1996, Kiser changed posted conduct rules in plaintiff's classroom without plaintiff's permission. In January 1997, the test scores of plaintiff's class were falsified to show that they were below those of the class of a first-year teacher at plaintiff's school. Plaintiff was embarrassed when the test results were published to her fellow teachers. She determined that Kiser had placed the test results of two failing students who were not in plaintiff's class with plaintiff's scores and had placed the scores of one of plaintiff's excellent students with the first-year teacher's scores. Although the error was corrected, the new results were not distributed to the teachers in written form.

In February, plaintiff's principal informed her that she desired plaintiff to move to a different school. Between 10 March 1997 and 5 June 1997, plaintiff was subjected to more than fifteen classroom observations and conference meetings. In April, she was placed on remediation and given an improvement plan with requirements she deemed onerous, including that she rewrite daily schedules and submit them for approval by the administration, submit lesson plans to the principal on a weekly basis, and conduct weekly conferences with administrators.

In May 1997, plaintiff was given two letters of insubordination, including one for declining to sign the improvement plan noted above. Furthermore, she was videotaped teaching a lesson, which plaintiff found intrusive. She was placed on probation in June despite complying with most of the principal's directives and despite her students' receiving a level 3 (with 4 being the highest) in every subject in their test scores.

In July 1997, plaintiff received calls from principals at other schools informing her that her name had been placed on a "displacement list." The Director of Human Resources told her this was a mistake, but that she was being transferred to a different school. Plaintiff was told she would have no input regarding her new placement, even though she requested that she be relocated to a school near her children. Plaintiff informed the Director of Human Resources she did not

want her son to have to ride the school bus, because he would then have to take increased medication for his attention-deficit/hyperactivity disorder.

Nevertheless, she was placed at a school a long distance from her children's school and was required to report to work 45 minutes earlier than her children's school began. She was furthermore placed in a kindergarten classroom, despite not having experience teaching kindergarten, and was not provided with a kindergarten start-up kit having a value of $1,500, which deprived her students of having the same materials as other beginning kindergarten classes.

Plaintiff alleged that as a result of the above actions, she experienced major depression, chronic anxiety, sleep disturbances, weight loss, and general malfunctioning on a daily basis. She furthermore alleged that her family suffered extreme stress, resulting in her husband's developing cracked teeth and her children failing their course work and having to attend summer school.

Defendant moved for summary judgment on the grounds that plaintiff could not prove the elements of her claim, and that it had governmental immunity against the suit due to its lack of insurance. Judge John M. Gardner granted defendant's motion for summary judgment on the basis that there was no genuine issue of material fact as to the outrageous conduct element of plaintiff's claim. Plaintiff filed notice of appeal to this Court.

In ruling on a motion for summary judgment, the trial court must determine whether the pleadings, affidavits, and discovery materials submitted by the parties establish "that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). The moving party has the burden to show the lack of a triable issue and may meet this burden by showing that the non-moving party cannot produce evidence to support an essential element of its claim. *Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 858 (1988). Moreover, the court must view the evidence presented in the light most favorable to the non-moving party. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992).

The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct (2) which is intended to and does cause (3) severe emotional distress to another. *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). The conduct

in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 123, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986) (quoting Restatement (Second) of Torts § 46, Comment d (1965)). It is for the court to decide whether defendant's alleged behavior rises to the level of being extreme and outrageous, as it is a question of law. *See id.* at 490, 340 S.E.2d at 121.

Taking all of plaintiff's allegations as true, we do not believe she has shown defendant's conduct was sufficiently extreme and outrageous to make out a claim for intentional infliction of emotional distress. For the most part, her allegations show defendant was following its procedures for evaluating and eliminating problematic teachers. Even assuming various school personnel went through these motions in bad faith, based on some personal animosity toward plaintiff, their conduct did not go "beyond all possible bounds of decency."

In *Wagoner v. Elkin City Schools' Bd. of Education*, 113 N.C. App. 579, 440 S.E.2d 119, *disc. review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994), the plaintiff's principal, *inter alia*, visited the gym while she was teaching and stared at her for "minutes at a time," did not show up for scheduled evaluations, told her one day that if he were grading her, he would give her an "F," switched her from physical education teacher to an ISS coordinator, placed her office in a small room with a temperature of 90 to 100 degrees and no phone, denied her the opportunity to attend workshops in her area, assigned her different working hours than the other teachers, told her she had the worst job in the school, and returned a student that had pushed plaintiff to her classroom.

This Court held that while the principal's conduct may well have been insulting to the plaintiff and have caused her to suffer "indignities," we did not regard his behavior "as atrocious, and utterly intolerable in a civilized community." *Id.* at 586, 440 S.E.2d at 124. Plaintiff in this case has not established a fact pattern more egregious than that presented by *Wagoner*.

We conclude that the trial court did not err in granting defendant's motion for summary judgment on the ground that plaintiff could not prove an essential element of her claim.

Affirmed.

Judges GREENE and McCULLOUGH concur.