DIANA WELLS, PLAINTIFF v. NORTH CAROLINA DEPARTMENT OF CORRECTION, A DEPARTMENT OF THE STATE OF NORTH CAROLINA, STATE OF NORTH CAROLINA, THEODIS BECK, SECRETARY OF THE DEPARTMENT OF CORRECTION, DUNCAN DAUGHTRY, INDIVIDUALLY AND AS SUPERINTENDENT OF THE DEPARTMENT OF CORRECTION, NEWPORT BRANCH, AND ANTHONY FLORENCE, INDIVIDUALLY AND AS SUPERVISOR OF THE DEPARTMENT OF CORRECTION, NEWPORT BRANCH, DEFENDANTS

No. COA01-1199

(Filed 20 August 2002)

## 1. Public Officers and Employees— workplace harassment— Whistleblower action

The trial court did not err by determining that plaintiff's Whistleblower action was properly before the court rather than the State Personnel Commission where the action arose from workplace harassment. N.C.G.S. § 126-36(b) provides plaintiff with the right to appeal directly to the State Personnel Commission but does not bar a Whistleblower action. N.C.G.S. § 126-84 et seq.

## 2. Employer and Employee— workplace harassment—analytic model—pretext rather than mixed-motive

The trial court properly addressed plaintiff's Whistleblower action under a pretext model rather than a mixed-motive model where plaintiff did not present any clear signs that the alleged adverse employment action was directly related to her sexual harassment complaint. The trigger for use of the mixed motive model is evidence of conduct or statements that reflect directly the alleged illegitimate criterion and that bear directly on the contested employment decision. A mixed motive does not exist simply because a wrongful motive might be inferred from a prima facie case.

## 3. Employer and Employee— workplace harassment—pretext—insufficient evidence

The trial court correctly granted summary judgment for defendants on plaintiff's Whistleblower action where plaintiff did not produce sufficient evidence that a change in plaintiff's work conditions and a "Below Good" performance evaluation were merely pretextual. Defendants presented legitimate, non-retaliatory reasons for the changes in plaintiff's working conditions and her performance evaluation; to raise a factual issue regarding pretext, plaintiff's evidence must go beyond a prima facie showing by pointing to specific, non-speculative facts which discredit defendant's non-retaliatory motive.

### 4. Emotional Distress; Immunity— state employee—workplace harassment—sovereign immunity

The trial court correctly granted summary judgment for defendants Florence and Daughtry on plaintiff's emotional distress claims arising from her employment with the state Department of Correction where the trial court erroneously determined that the claims were barred by sovereign immunity, but the evidence of extreme and outrageous conduct was insufficient for intentional infliction of emotional distress and the evidence of foreseeability was insufficient for negligent infliction of emotional distress. Summary judgment should be affirmed on appeal if it can be sustained on any grounds.

Appeal by plaintiff from judgment entered 9 July 2001 by Judge Jay D. Hockenbury in Carteret County Superior Court. Heard in the Court of Appeals 4 June 2002.

*Patterson, Harkavy & Lawrence, L.L.P., by Martha A. Geer; and Davis, Murrelle & Lyles, P.A., by Edward L. Murrelle, for plaintiff-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Thomas H. Moore, for defendants-appellees.*

WALKER, Judge.

On 29 October 1999, plaintiff filed an amended complaint asserting a claim against defendants in their official capacities for wrongful workplace retaliation in violation of N.C. Gen. Stat. § 126-84, *et seq.* (the Whistleblower Act). Plaintiff also asserted claims against defendants Duncan Daughtry (Daughtry) and Anthony Florence (Florence) in their individual capacities for intentional infliction of emotional distress and negligent infliction of emotional distress. On 9 July 2001, the trial court entered summary judgment for defendants on all claims.

In her complaint, plaintiff alleged that in 1998, while employed as an office assistant at the Carteret Correctional Center in Newport (Carteret), she reported that her supervisor, Florence, had made "inappropriate, sexual comments, overtures, and gestures" towards her. She further alleged that, although the Equal Employment Opportunities/Title VII (EEO) section of the Department of Corrections (DOC) determined her report was "unfounded," defendants wrongfully retaliated against her by creating a "hostile" work

environment. Specifically, plaintiff asserted that, after she made her report, defendants: (1) forced her to return "back to Florence's supervision," (2) required her to perform an "excessive amount of work equivalent for two people," and (3) gave her "below average and unsatisfactory job evaluations." As a result, plaintiff developed "headaches, chest pain, depression, fatigue, decreased motivation, and decreased energy" for which she needed medical treatment and was ultimately forced to resign her position.

In support of their motion for summary judgment, defendants provided affidavits from DOC Eastern Region Director Joseph Lofton (Lofton), former Programs Supervisor at Carteret Wallace Lunsford (Lunsford), Florence, and Daughtry. In Daughtry's affidavit, he stated that, as the Superintendent of Carteret, he became aware of "difficulties in communications" between plaintiff and Florence concerning "job assignments" in January of 1998. To alleviate the problem, Daughtry transferred plaintiff to the "direct supervision" of Lunsford. Nonetheless, plaintiff "continued to provide clerical support to . . . Florence and others in his department." According to Daughtry, he was not informed of plaintiff's allegations of sexual harassment until December of 1998. Following the EEO's determination that the allegations were unsubstantiated and after receiving instructions from Lofton, he returned plaintiff to Florence's direct supervision. At that time, another office assistant was on long-term sick leave and Lunsford was in the process of transferring to another correctional facility. Therefore, it became necessary to reassign the clerical duties normally handled by these two employees to "other staffers," including plaintiff. Daughtry further averred that plaintiff received a "Below Good" rating from Lunsford and Florence during her last year of employment. He attributed the rating to plaintiff's "problems with missing work, being tardy for work, . . . poor relations with co-workers," and an incident in which plaintiff failed to properly report that she had lost her set of security keys.

In his affidavit, Lofton averred that, in November of 1998, he received a request from Daughtry to investigate "morale problems" at Carteret. At the time, he perceived the problems to be "centered around a complaint made by . . . plaintiff concerning her interim appraisal . . . ." Consequently, Lofton sent two officials from the Eastern Region Office to Carteret to conduct an investigation, during which plaintiff alleged that Florence had sexually harassed her. In accordance with DOC policy, plaintiff's allegation was forwarded to the EEO. Lofton further stated that, after the investigation, he "was

concerned of the finding . . . that the programs staff at Carteret were afraid to give directions to . . . plaintiff due to the perception of retaliation from her husband, Charles Wells, a correctional sergeant at Carteret." Following receipt of an EEO letter concluding that plaintiff's allegations of sexual harassment could not be substantiated, he ordered that plaintiff be moved back under Florence's direct supervision. His reasons for doing so were "to put [plaintiff] back where she belonged in the organizational chart, to dispel the staff concerns that [plaintiff] could move around at will in the institution whenever she voiced dissatisfaction at her supervisor, and to also alleviate [plaintiff's] concerns that she had been 'demoted . . . .' " Finally, Lofton noted that, in May of 1999, he received a grievance from plaintiff regarding a "Below Good" performance evaluation for the period of 1 April 1998 to 31 March 1999. After reviewing the evaluation, he declined to act on plaintiff's grievance; nevertheless, he informed plaintiff she could appeal his decision to the Secretary of Correction.

In his affidavit, Florence denied having sexually harassed plaintiff. He further averred that in December of 1997, he became concerned about plaintiff's "repeated tardiness and her lack of attention to some specific job assignments . . . ." Although he attempted to voice his concerns directly to plaintiff, Florence found her response "made it clear that she did not think that my concerns . . . were something that I should have addressed with her." Soon thereafter, Daughtry transferred plaintiff to Lunsford's direct supervision. In the summer of 1998, Florence noted an improvement in plaintiff's job performance and, in an effort to "reenforce this behavior," he recommended that plaintiff be named "Employee of the Month" for July of 1998. However, in the succeeding months, plaintiff became "upset" with Lunsford's supervision and received "Below Good" ratings from Lunsford in her performance log for the months of August and September. When plaintiff was returned to his direct supervision, Florence issued a memorandum in which he re-distributed the clerical duties formerly performed by Lunsford and the office assistant who was on leave. In his opinion, plaintiff was "not assigned any duties outside of her job description." Once plaintiff expressed concern that she was "doing the workload of two people," he and Daughtry met with plaintiff and compared plaintiff's job description to that of the office assistant on leave. According to Florence, "[o]ur review showed that [plaintiff] was not being given any assignments outside of her job description and that she did not do most of the job tasks on [the absent office assistant's] job description."

Finally, in his affidavit, Lunsford corroborated the statements of Daughtry and Florence that plaintiff was transferred to his direct supervision in order to "resolve communication problems" between Florence and plaintiff. He further averred that, while under his supervision, plaintiff "frequently complained to me about her work, specifically about the tasks she was assigned to do." Lunsford noted that plaintiff had a history of "either being tardy or not showing up for work and she never built up a substantial balance of sick or vacation time." Although he encouraged plaintiff to improve on these points, plaintiff was "resistant to constructive criticism on how to go about improving both her job performance and attendance problems."

Among the evidence plaintiff presented in response to defendants' summary judgment motion was her affidavit, in which she stated that, during an investigation in December of 1998, she "truthfully answered some questions regarding what [she] perceived to have been sexual harassment and a hostile work environment caused by . . . Florence." She further maintained that defendants' contention concerning the fact that she did not receive any additional job assignments following her report was "untrue." She then listed certain "new duties" which she asserted were previously assigned to the other office assistant that she "assume[d]" after she returned to Florence's direct supervision. Plaintiff also presented various performance evaluations. In a 1996 evaluation, plaintiff received an overall "Good" rating from her previous supervisor, Jerry Moore, who specifically noted that plaintiff "takes on her duties in a professional manner," "assists other staff very well," and "has demonstrated good work habits." Plaintiff contrasted this rating with a "Below Good" rating she received on her 1999 evaluation based on "Below Good" performances in "supervision," "planning and organization," and "communication" and "Unsatisfactory" performances in "safety and security" and "performance stability." Notwithstanding the overall "Below Good" rating, plaintiff averred that she "worked hard" and "did not have trouble with co-workers." Lastly, plaintiff provided an affidavit from a former co-worker, James Montanye, who stated that in 1999 Florence had complimented plaintiff's work in "computing gain time."

After reviewing the affidavits, pleadings and other materials submitted by the parties, the trial court determined that plaintiff's evidence "establish[ed] a *prima facie* case of retaliation," but that defendants' evidence "rebutted the Plaintiff's *prima facie* showing" by "establish[ing] that there were legitimate, nondiscriminatory rea-

sons for all acts or omissions that the Plaintiff . . . alleged were retaliatory. . . ." The trial court then concluded that plaintiff "fail[ed] to establish any evidence of pretext on the part of the Defendants for their stated legitimate, nondiscriminatory reasons . . . ." In addition, the trial court determined that "all alleged wrongful acts or omissions by Defendants Duncan Daughtry and Anthony Florence occurred within the scope of their employment" and, as such, "the doctrine of sovereign immunity bars" plaintiff's emotional distress actions.

I.

[1] We first address whether plaintiff's retaliation claim comes within the provisions of the Whistleblower Act. Defendants contend that retaliation claims such as the one made by plaintiff must come before the State Personnel Commission pursuant to N.C. Gen. Stat. § 126-36(b). Therefore, defendants argue that summary judgment was appropriate as plaintiff had no remedy under the Whistleblower Act.

Under N.C. Gen. Stat. § 126-36(b):

[A]ny State employee or former State employee who has reason to believe that the employee has been subjected to any of the following shall have the right to appeal directly to the State Personnel Commission:

. . .

(2) Retaliation for opposition to harassment in the workplace based upon age, sex, race, color, national origin, religion, creed, or handicapping condition, whether the harassment is based upon the creation of a hostile work environment or upon a quid pro quo.

N.C. Gen. Stat. § 126-36(b) (2001).

On the other hand, the Whistleblower Act states in pertinent part:

It is the policy of this State that State employees shall be encouraged to report verbally or in writing to their supervisor, department head, or other appropriate authority, evidence of activity by a State agency or State employee constituting:

(1) A violation of State or federal law, rule or regulation;

. . .

No State employee shall retaliate against another State employee because the employee, or a person acting on behalf of the employee reports . . . [a violation of the Whistleblower Act].

. . .

Any State employee injured by a violation of the [Whistleblower Act] may maintain an action in superior court for damages, an injunction, or other remedies provided . . . .

N.C. Gen. Stat. § 126-84 *et seq.*

Defendants maintain that because N.C. Gen. Stat. § 126-36(b) specifically addresses workplace harassment, the State Personnel Commission was the "exclusive forum" for plaintiff's action. In response, plaintiff contends that since harassment in the workplace is a violation of "state and federal law," her action under the Whistleblower Act is proper.

Based on our analysis of these two statutes, we do not interpret N.C. Gen. Stat. § 126-36(b) as precluding plaintiff's Whistleblower action. Indeed, the statute merely provides plaintiff with "*the right to appeal*" her wrongful retaliation claim directly to the State Personnel Commission. N.C. Gen. Stat. § 126-36(b) (emphasis added). Such "right to appeal" does not otherwise bar an action which meets the requirements of the Whistleblower Act. Furthermore, when N.C. Gen. Stat. § 126-36(b) is read *in para materia* with the Whistleblower Act, the two statutes are not irreconcilable. *See Occaneechi Band of the Saponi Nation v. N.C. Comm'n of Indian Affairs*, 145 N.C. App. 649, 654, 551 S.E.2d 535, 539, *disc. rev. denied*, 354 N.C. 365, 556 S.E.2d 575 (2001) ("When multiple statutes address a single matter or subject, the statutes must be construed *in para materia,* 'as together constituting one law,' and harmonized to give effect to each statute whenever possible"). We conclude the two statutes create alternative means for an aggrieved party to seek relief. *See generally Swain v. Elfland*, 145 N.C. App. 383, 389, 550 S.E.2d 530, 535, *cert. denied*, 354 N.C. 228, 554 S.E.2d 832 (2001) (holding N.C. Gen. Stat. § 136-34.1(a)(7) and the Whistleblower Act provide "two avenues to redress violations of the Whistleblower statute")[1]. Accordingly, the trial court did not err in determining that plaintiff's Whistleblower action was properly before the court.

---

1. The record does not indicate plaintiff filed a wrongful retaliation claim with the State Personnel Commission. Thus, unlike *Swain*, this case does not present an issue of claim preclusion.

## II.

We next consider whether a genuine issue of material fact exists regarding plaintiff's Whistleblower action. The law, as it pertains to this area, was first addressed by this Court in *Kennedy v. Guilford Tech. Community College*, 115 N.C. App. 581, 448 S.E.2d 280 (1994). Initially, the plaintiff must establish a *prima facie* case of retaliation, the elements of which are: (1) the plaintiff's engagement in a " 'protected activity,' " (2) an " 'adverse employment action' " occurring subsequent to the " 'protected activity,' " and (3) the plaintiff's engagement in the " 'protected activity' " was a " 'substantial or motivating factor' " in the " 'adverse employment action.' " *Id.* at 584, 448 S.E.2d at 282 (*quoting McCauley v. Greensboro City Bd. of Educ.*, 714 F. Supp. 146, 151 (M.D.N.C. 1987)); *see also Hanton v. Gilbert*, 126 N.C. App. 561, 571, 486 S.E.2d 432, 439, *disc. rev. denied*, 347 N.C. 266, 493 S.E.2d 454 (1997). Once a *prima facie* case is made, the defendant must then " 'articulate a legitimate, non-discriminatory reason for the adverse [employment] action.' " *Kennedy*, 115 N.C. App. at 585, 448 S.E.2d at 282 (*quoting Melchi v. Burns Int'l Sec. Servs. Inc.*, 597 F.Supp. 575, 582 (E.D. Mich. 1984)). "Finally, if the defendant . . . meets its burden [of production], the plaintiff must then come forward with evidence to show 'that the legitimate reason was a mere pretext for the retaliatory action.' " *Id.* "[T]hus, 'a plaintiff retains the ultimate burden of proving that the [adverse employment action] would not have occurred had there been no protected activity' engaged in by the plaintiff." *Id.*

As with other summary judgment determinations, the trial court must view the evidence in the light most favorable to the non-movant. *Id.* at 583, 448 S.E.2d at 281. All reasonable inferences are drawn in the non-movant's favor. *Id.* While a trial court's findings and conclusions in support of a summary judgment may be helpful, "they are to be disregarded on appeal." *See Sunamerica Financial Corp. v. Bonham*, 328 N.C. 254, 261, 400 S.E.2d 435, 440 (1991); and *Mosley v. National Finance Co.*, 36 N.C. App. 109, 111, 243 S.E.2d 145, 147, *disc. rev. denied*, 295 N.C. 467, 246 S.E.2d 9 (1978).

Plaintiff presents two alternative grounds as to why the trial court's grant of summary judgment on her Whistleblower action was improper: (1) the trial court failed to apply the appropriate analytical model to her action, and (2) even if the trial court applied the appropriate model, she presented sufficient evidence to withstand summary judgment.

## A. Proper Analytical Model

[2] Plaintiff first argues that rather than utilizing the pretext model of analysis articulated in *Kennedy*, the trial court should have used a mixed-motive model resembling the one set forth by the United States Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 104 L. Ed. 2d 268 (1989). We disagree.

In *Price Waterhouse*, the Court recognized two distinct means for analyzing actions brought under Title VII of the 1964 Civil Rights Act—the pretext model and the mixed-motive model. The traditional pretext model follows the analysis developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668 (1973) and its progeny, *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 125 L. Ed. 2d 407 (1993), and was applied to Whistleblower actions by this Court in *Kennedy*. However, in *Price Waterhouse*, the Court recognized the shortcomings of using the pretext model in cases where the evidence clearly shows that the adverse employment decision was the result of a "mixture of legitimate and illegitimate motives." *Price Waterhouse*, 490 U.S. at 232, 104 L. Ed. 2d 276. Thus, in cases in which the plaintiff's *prima facie* case presents "*direct evidence* that decisionmakers placed substantial negative reliance on an illegitimate criterion," the burden of persuasion shifts to the defendant, who must then demonstrate that it would have made the same decision even absent the illegitimate criterion. *Id.* at 258, 277, 104 L. Ed. 2d at 293, 305 (emphasis added). The evidence required to trigger use of the mixed-motive model is "evidence of conduct or statements that both reflect directly the alleged [illegitimate criterion] and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995).

As plaintiff points out, this Court recently applied the mixed-motive/pretext distinction to an action brought under N.C. Gen. Stat. § 143-422.1 (the Equal Employment Practices Act). *See Brewer v. Cabarrus Plastics*, 146 N.C. App. 82, 551 S.E.2d 902, *appeal filed*, (No. 560A01, 26 September 2001). In *Brewer*, the plaintiff alleged that the defendant had discriminated against him on the basis of race and had wrongfully retaliated for filing a complaint of racial discrimination. Our Court determined that the mixed-motive/pretext distinction applied, but concluded that because the plaintiff had presented no direct evidence of discrimination, the case was properly categorized as a pretext model case. *Id.* at 86, 551 S.E.2d at 905.

Nonetheless, even if we were to assume the same distinction also applies to a Whistleblower action, plaintiff here has failed to proffer sufficient direct evidence of retaliation on the part of defendants to warrant analysis using the mixed-motive model. The substance of plaintiff's allegation is that defendants wrongfully responded to her report of sexual harassment by: (1) returning her to Florence's supervision, (2) requiring her to perform additional work assignments, and (3) giving her a negative performance rating. As "direct evidence" in support of her allegation, plaintiff cites Lofton's affidavit in which he states that he returned plaintiff to Florence's supervision "to dispel the staff concerns that [plaintiff] could move around at will in the institution whenever she voiced dissatisfaction at her supervisor." Plaintiff also cites a notation on her 1999 performance evaluation indicating that she "demonstrated difficulty in communicating with her supervisor" and that she had "poor relations with co-workers."

We are not persuaded that plaintiff has presented the direct evidence required to treat her Whistleblower action as a mixed-motive case. By way of contrast, the plaintiff in *Price Waterhouse* cited specific comments from the defendant's partners to support her allegation of gender discrimination. This evidence included a partner's suggestion that, in order to advance within the company, she should " 'walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry.' " *Price Waterhouse*, 490 U.S. at 235, 104 L. Ed. 2d at 278. Similarly, in *Kubicko v. Ogden Logistics Services*, 181 F.3d 544 (4th Cir. 1999), the plaintiff alleged that he was terminated in retaliation for opposing a supervisor's sexual harassment of a female co-worker. To substantiate his allegation, the plaintiff provided specific statements and actions of his supervisor which clearly reflected a retaliatory attitude. The evidence included the supervisor's statement that the reason for the plaintiff's termination was because the plaintiff had "initiated" the co-worker's complaints of sexual harassment. *Kubicko*, 181 F.3d at 553.

Unlike the evidence in *Price Waterhouse* and *Kubicko*, plaintiff's evidence here does not establish a clear connection between her sexual harassment complaint and the decision to return her to Florence's supervision or the "Below Good" rating on her performance evaluation. Although plaintiff argues such a connection can be inferred, "[s]imply because a . . . [wrongful] reason might be inferred from a *prima facie* case does not mean that a mixed motive case exists." *Schleinger v. Des Moines Water Works*, 925 F.2d 1100, 1101

(8th Cir. 1991). As is required in mixed-motive model cases, plaintiff did not present any "clear signs" that the "alleged adverse employment action" was directly related to her sexual harassment complaint. Hence, we conclude the trial court properly addressed her action as a pretext case. *See Price Waterhouse*, 490 U.S. at 235, 104 L. Ed. 2d at 278.

## B. Sufficiency of the Evidence

**[3]** Plaintiff also maintains that she provided sufficient evidence to raise an issue of fact concerning whether defendants' stated reasons for the changes in her working conditions and her "Below Good" performance evaluation were merely pretexts for their retaliatory motives. This Court has previously held that, in a Whistleblower action, "once a defendant, moving for summary judgment, presents evidence that the adverse employment action is based on a legitimate non-retaliatory motive, the burden [of production] shifts to the plaintiff to present evidence, raising a genuine issue of fact, that his [engagement in a protected activity] . . . [was] a *substantial causative factor* in the adverse employment action, or provide an excuse for not doing so." *Aune v. University of North Carolina*, 120 N.C. App. 430, 434-35, 462 S.E.2d 678, 682 (1995), *disc. rev. denied*, 342 N.C. 893, 467 S.E.2d 901 (1996) (citations omitted) (emphasis added). To raise a factual issue regarding pretext, the plaintiff's evidence must go beyond that which was necessary to make a *prima facie* showing by pointing to specific, non-speculative facts which discredit the defendant's non-retaliatory motive. S*ee Kennedy*, 115 N.C. App. at 589, 448 S.E.2d at 284.

Here, assuming *arguendo* that plaintiff has established a *prima facie* case, defendants presented legitimate, non-retaliatory reasons for the changes in plaintiff's working conditions and her "Below Good" performance evaluation. Defendants noted in general that plaintiff remained in the same job classification, earned the same salary, and accrued the same benefits. In response to her particular allegations, defendants asserted that the reasons for plaintiff's return to Florence's direct supervision were: (1) because Lunsford had left Carteret, (2) to place her "where she belonged within the organizational chart," and (3) to address staff concerns that plaintiff could change supervisors whenever she voiced her "dissatisfaction." With respect to any additional work duties assigned to plaintiff, defendants stated that such assignment was necessary to cover the clerical work previously performed by Lunsford and by an office assistant who was on leave. Defendants further responded that, in any event, plaintiff

was not required to perform any duties "outside of her job description" and was never required to work overtime. Finally, according to defendants, plaintiff received an overall "Below Good" rating on her performance evaluation due to her tardiness and absenteeism, poor relations with co-workers, and failure to properly report a lost set of security keys. Defendants also point out that plaintiff had received "Below Good" ratings from Lunsford on interim evaluations prior to her sexual harassment complaint.

As a response to defendants' reasons for returning her to Florence's supervision, plaintiff asserts that "[d]efendants have offered no serious explanation for insisting that [plaintiff] report to the person who harassed her," and, therefore, "a jury could consider punitive a requirement that [plaintiff] again work with . . . Florence after [Daughtry] had previously decided separation was necessary." In support of this position, plaintiff cites *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989), *rev'd in part on other grounds*, 900 F.2d 27 (4th Cir. 1990) (per curiam). However, in *Paroline*, the Court was not faced with the issue of whether the plaintiff's evidence was sufficient to raise a factual question of pretext. Rather, the Court addressed whether an employee's established acts of sexual harassment could be imputed to an employer. *Id.* at 106-07. In any event, plaintiff has failed to present any evidence which would indicate that defendants' stated reasons for returning her to Florence's supervision were not in accordance with any DOC personnel policies or were not otherwise legitimate. She merely renews her allegation that defendants "had no serious explanation." *See Kennedy*, 115 N.C. App. at 585, 448 S.E.2d at 282 ("An articulated reason is not 'legitimate' . . . unless it has 'a rational connection with the business goal of securing a competent and trustworthy work force.' ") (*quoting Harris v. Marsh*, 679 F.Supp. 1204, 1285 (E.D.N.C. 1987), *aff'd in part, rev'd in part on other grounds by Blue v. U.S. Dept. of Army*, 914 F.2d 525 (4th Cir. 1990), *cert. denied*, 499 U.S. 959, 113 L. Ed. 2d 645 (1991)).

Plaintiff further contends that, with respect to the additional work duties, her evidence "quantified that the additional duties required as much as an additional 33 hours per week," and that "defendants did not include the job descriptions in the record" to support their reasons for demanding she "assume the duties of two people." However, even if we accept plaintiff's calculations, such evidence does not discredit defendants assertion that the additional job assignments were necessary to cover the absence of other employees or that plaintiff was never required to perform work outside of her job description or work overtime.

Lastly, regarding her "Below Good" performance evaluation, plaintiff maintains that the " 'telling temporal sequence' " between her sexual harassment complaint and her negative evaluation, by itself, is "sufficient [for] a jury to find pretext." As authority, plaintiff cites this Court's first holding in *Brewer v. Cabarrus Plastics*, 130 N.C. App. 681, 504 S.E.2d 580 (1998), *disc. rev. denied*, 350 N.C. 91, 527 S.E.2d 662 (1999) and the decisions in *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2nd Cir. 1998) and *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992). However, *Brewer* and *Shirley* concerned whether the passage of a certain amount of time precluded as a matter of law the plaintiff's establishment of a *prima facie* case and not whether the plaintiff had established pretext. *Brewer*, 130 N.C. App. at 691, 504 S.E.2d at 586-87 (holding that the passage of fifteen months between the filing of an EEOC charge and the plaintiff's termination did not negate a causal connection between the two events), and *Shirley*, 970 F.2d at 43-44 (holding that the passage of fourteen months between the plaintiff's initial EEOC charge and the defendant's alleged retaliatory conduct was not "legally conclusive proof" against retaliation). Additionally, the holding in *Quinn* is distinguishable from this case in view of the fact that in *Quinn* "[n]early all of the record evidence supporting the [defendant's] asserted non-retaliatory reason . . . was generated by two of [the plaintiff's] alleged harassers . . . and followed her initial [complaint] . . . ." *Quinn*, 159 F.3d at 770. In contrast, the record here shows that plaintiff received "Below Good" ratings from Lunsford on her interim appraisals prior to her sexual harassment complaint. Plaintiff also has not presented any facts to discredit defendants' assertion that her overall "Below Good" performance evaluation was due to her tardiness and absenteeism, poor relations with co-workers, and loss of a set of security keys. Therefore, we conclude plaintiff failed to produce sufficient evidence to raise a factual question concerning whether defendants' legitimate, non-retaliatory reasons for the change in her work conditions and her "Below Good" performance evaluation were merely pretextual. Accordingly, the trial court properly granted summary judgment to defendants on plaintiff's Whistleblower action.

III.

[4] Lastly, we address whether the trial court properly granted summary judgment in favor of Florence and Daughtry on plaintiff's emotional distress claims. Plaintiff contends the trial court erred in determining that these claims were barred based on the doctrine of sovereign immunity. Florence and Daughtry maintain that, because

WELLS v. N.C. DEP'T OF CORR.

[152 N.C. App. 307 (2002)]

they were sued only in their "official capacities," summary judgment was proper.

In *Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997), our Supreme Court outlined the guidelines for determining whether a claim for relief may be made against an individual who is employed by the State. The first determination to be made is whether the complaint seeks recovery from a named defendant in his official or individual capacity or both. If the court determines that the defendant is being sued in his individual capacity, it must next determine whether the individual is a public official or public employee. This determination is important for negligence claims because, "[p]ublic officials cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties; public employees can." *Meyer*, 347 N.C. at 112, 489 S.E.2d at 888. However, if the plaintiff alleges an intentional tort claim, a determination is unnecessary since, in such cases, neither a public official nor a public employee is immunized from suit in his individual capacity. *See Hawkins v. State*, 117 N.C. App. 615, 630, 453 S.E.2d 233, 242, *disc. rev. denied*, 342 N.C. 188, 463 S.E.2d 79 (1995).

> "The crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged. If the plaintiff seeks an injunction requiring the defendant to take an action involving the exercise of a governmental power, the defendant is named in an official capacity. If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, its an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities."

*Meyer*, 347 N.C. at 110, 489 S.E.2d at 887 (*quoting* Anita R. Brown-Graham & Jeffrey S. Koeze, *Immunity from Personal Liability under State Law for Public Officials and Employees: An Update*, Loc. Gov't L. Bull. 67 (Inst. of Gov't, Univ. of N.C. at Chapel Hill), Apr. 1995, at 7). "Whether the allegations relate to actions outside the scope of [the] defendant's official duties is not relevant in determining whether the defendant is being sued in his or her official or individual capacity." *Id.* at 111, 489 S.E.2d at 888.

Here, our review of the record reveals that, in the caption of her complaint, plaintiff designated that Florence and Daughtry were

being sued in both their official and individual capacities. Additionally, in the prayer for relief for her emotional distress claims, plaintiff seeks monetary damages directly from Florence and Daughtry and not from the other named defendants. Thus, we conclude Florence and Daughtry were sued in their individual capacities with respect to these claims. Moreover, because intentional infliction of emotional distress is an intentional tort, Florence and Daughtry were not entitled to immunity as to this claim.

In accordance with the holding in *Meyer*, we next consider whether Florence and Daughtry are public officials and therefore are immune from plaintiff's claim for negligent infliction of emotional distress. As our Supreme Court has noted:

> Our courts have recognized several basic distinctions between a public official and a public employee, including: (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties.

*Isenhour v. Hutto*, 350 N.C. 601, 610, 517 S.E.2d 121, 127 (1999) (citations omitted). " 'Discretionary acts are those requiring personal deliberation, decision and judgment' " while "[m]inisterial duties . . . are absolute and involve 'merely [the] execution of a specific duty arising from fixed and designated facts.' " *Id.* (*quoting Meyer*, 347 N.C. at 113-14, 489 S.E.2d at 889).

Aside from their respective job titles, the record does not detail the job responsibilities of Florence and Daughtry. Also, neither defendant has cited authority which specifically categorizes their position as a public official. Hence, we are unable to conclude that either Florence or Daughtry is a public official entitled to immunity on plaintiff's claim for negligent infliction of emotional distress. Nevertheless, the trial court's grant of summary judgment as to plaintiff's emotional distress claims can be sustained on other grounds. *See Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989) ("If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered").

Regarding plaintiff's intentional infliction of emotional distress claim, plaintiff's evidence fails to demonstrate that Florence's and

Daughtry's conduct was " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 123, *disc. rev. denied*, 317 N.C. 334, 346 S.E.2d 140 (1986) (*quoting* Restatement (Second) of Torts § 46, Comment d (1965)). Indeed, Lofton ordered that plaintiff be returned to Florence's supervision and the "Below Good" evaluation was based in part on observations made by Lunsford. Even assuming Florence and Daughtry did not always agree with plaintiff, their decisions concerning plaintiff's working conditions did not go "beyond all possible bounds of decency." *See e.g. Stamper v. Charlotte-Mecklenburg Bd. of Ed.*, 143 N.C. App. 172, 174-75, 544 S.E.2d 818, 820 (2001) (holding that conduct of a principal and other officials in subjecting teacher to more than 15 classroom observations and conference meetings, videotaping her while she was teaching a lesson, and transferring her to a school which was a long distance away from her children's school was not sufficiently "extreme and outrageous" conduct to support a claim for intentional infliction of emotional distress). Therefore, we conclude, as a matter of law, that their alleged actions do not rise to a level of "extreme and outrageous" conduct necessary to support an action for intentional infliction of emotional distress. *See Hogan*, 79 N.C. App. at 490, 340 S.E.2d at 121 ("It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery").

With respect to plaintiff's claim for negligent infliction of emotional distress, such an action has three elements: "(1) defendant engaged in negligent conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress and (3) defendant's conduct, in fact, caused severe emotional distress." *Robblee v. Budd Services, Inc.*, 136 N.C. App. 793, 795, 525 S.E.2d 847, 849, *disc. rev. denied*, 352 N.C. 676, 545 S.E.2d 228 (2000). Based on our review of the record, we conclude that plaintiff failed to forecast sufficient evidence that it was reasonably foreseeable that Florence's and Daughtry's decision to change her working conditions would cause her severe emotional distress. Therefore, summary judgment on plaintiff's negligent infliction of emotional distress claim was also appropriate.

In sum, we hold the trial court properly entered summary judgment for all defendants on plaintiff's Whistleblower claim and we

further conclude that Florence and Daughtry were entitled to summary judgment on plaintiff's emotional distress claims. Accordingly, the decision of the trial court is

Affirmed.

Judges McCULLOUGH and BRYANT concur.