SHANNON CAUDILL, Plaintiff v. JAMES L. DELLINGER, C. RICKY BOWMAN, in his official capacity as District Attorney of Judicial District 17-B, and THE ADMINISTRATIVE OFFICE OF THE COURTS, Defendants

No. COA97-966

(Filed 16 June 1998)

1. Public Officers and Employees § 43 (NCI4th)— Whistleblower Act—application to district attorney

The trial court erroneously granted summary judgment for defendant Dellinger, a former district attorney, for a claim under the North Carolina Whistleblower Act by a former employee. While the trial court apparently granted defendant Dellinger's motion for summary judgment on this claim partially on the theory that the Act does not apply to constitutional officers of the State under N.C.G.S. § 126-5(c1)(1), the legislative intent that the protections of the legislation apply to all state employees is clear. Furthermore, plaintiff's forecast of evidence makes out a *prima facie* claim under the Act in that she was performing satisfactorily as Dellinger's administrative assistant until she talked with the SBI agents in connection with their investigation of Dellinger, Dellinger discharged her almost immediately upon learning of her actions, and her cooperation with SBI agents was a substantial or motivating factor in the decision to discharge her.

2. Labor and Employment § 77 (NCI4th)— administrative assistant to district attorney—discharge for cooperating with SBI—common law wrongful discharge claim—summary judgment for DA properly denied

The trial court properly denied a former district attorney's motion for summary judgment on a common law wrongful discharge claim by his former administrative assistant who was discharged for cooperating with an SBI investigation into his expense accounts where he had pleaded sovereign immunity. Defendant was not entitled to the defense of sovereign immunity if he was acting outside the scope of his authority and, if the jury agrees that defendant-Dellinger discharged plaintiff for cooperating with the SBI, he was clearly acting outside the scope of his official duties and is not entitled to the protection of the sovereign immunity defense.

CAUDILL v. DELLINGER

[129 N.C. App. 649 (1998)]

**3. Public Officers and Employees § 35 (NCI4th)— discharge of district attorney's administrative assistant—free speech and due process claims under North Carolina Constitution—defendant sued in individual capacity**

The trial court should have granted defendant Dellinger's motion for summary judgment as to claims against him which were based on alleged violations of the North Carolina Constitution where Dellinger, a former district attorney, was sued in his individual capacity. Plaintiff may not successfully maintain an action against Dellinger in his individual capacity for alleged violations of her rights under the North Carolina Constitution.

**4. Constitutional Law § 86 (NCI4th)— wrongful discharge— section 1983 claims—sovereign immunity as defense**

The trial court correctly denied defendant Dellinger's motion for summary judgment on plaintiff's claims under 42 USC 1983 arising from her discharge as Dellinger's administrative assistant where Dellinger had been a district attorney at the time. Dellinger contended that he was entitled to absolute immunity because his actions were in the scope of his duties as a district attorney, but sovereign immunity alleged under state law is not a defense to an action under section 1983.

**5. Parties § 21 (NCI4th)— wrongful discharge of administrative assistant by former district attorney—succeeding district attorney and AOC—not necessary parties**

The trial court properly granted summary judgment for defendants AOC and Bowman in a wrongful discharge action against Bowman's predecessor as district attorney, defendant Dellinger, where there was no evidence of any violations by AOC or Bowman. Although plaintiff contends that AOC and Bowman are necessary parties because she will not otherwise be able to secure relief such as reinstatement, payment of back wages, or other employment benefits, plaintiff may collect money damages from Dellinger if successful but cannot be reinstated to her former position because Bowman is entitled by statute to an administrative assistant to serve "at his pleasure." The continuation of AOC and Bowman as parties adds nothing to plaintiff's range of remedies against Dellinger.

Judge LEWIS dissenting.

Appeal by plaintiff Shannon Caudill from orders entered 19 May 1997 and 3 June 1997, and appeal by defendant James L. Dellinger from the order entered 3 June 1997, all by Judge C. Preston Cornelius in Surry County Superior Court. Heard in the Court of Appeals 1 April 1998.

On 1 October 1991, plaintiff Shannon Caudill ("Caudill") began employment as an administrative assistant in the office of James L. Dellinger ("Dellinger"), then District Attorney for Judicial District 17-B (Surry and Stokes Counties). During October 1994, Caudill was interviewed by agents of the State Bureau of Investigation ("SBI"), who were investigating allegations that Dellinger had falsified expense reimbursement documents submitted to the State of North Carolina, and had caused his wife's name to be forged on certain banking and tax documents. Caudill answered the agents' questions about the forged documents and about Dellinger's relationship with Old North State Bank ("Bank").

Prior to 2 November 1994, SBI agents questioned Dellinger about his dealings with the Bank. Caudill stated in her deposition that Dellinger called her into his office on 2 November 1994 and asked her what she had told the SBI, since she was the "only one who knew about [his dealings with Old North State Bank]." According to Caudill, when she acknowledged she had talked with SBI agents about the Bank, Dellinger told her she was insubordinate, she was fired, and she had "one d-mn hour to get [her] sh-t out of [the office]."

Dellinger stated in his deposition that during the fall of 1994 he suffered heart problems which caused his hospitalization. Upon his release, he learned Caudill had made comments to the effect that she wished he had died, and that he had "faked" a heart attack to get sympathy. Dellinger stated further that he noticed a change in Caudill's attitude towards him, and other employees in his office complained about Caudill's attitude. On 2 November 1994, Dellinger talked by telephone with Cynthia Phillips, acting personnel administrator for the Administrative Office of the Courts ("AOC"), and told her that he had lost confidence in the loyalty of Caudill. He also told her about certain negative comments Caudill had allegedly made about him. He did not discuss the ongoing SBI investigation with Ms. Phillips or tell her that Caudill had talked with the agents. Ms. Phillips advised Dellinger it was "within his authority to fire [Caudill] if he wanted to."

In April 1995, Dellinger resigned as District Attorney, and C. Ricky Bowman ("Bowman") became the District Attorney for

District 17-B. On 5 May 1995, Caudill filed this action against Dellinger, Bowman (in his official capacity), and AOC. Caudill alleged six separate claims for relief against Dellinger, including: (1) he violated her rights under the North Carolina "Whistleblower Act," (N.C. Gen. Stat. § 126-84 (Cum. Supp. 1997), *et seq.*); (2) she was wrongfully discharged from her employment; (3) she was deprived of her freedom of speech as guaranteed by Article 1, § 14 of the North Carolina Constitution; (4) she was deprived of her right to freedom of speech under the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983; (5) she was deprived of her property without due process in violation of the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983; and (6) she was deprived of her property without due process in violation of Article 1, § 19 of the North Carolina Constitution. Plaintiff also added a seventh claim for relief against Bowman, contending that he could give her equitable relief by reinstating her, and could also pay money damages to her. In her eighth claim for relief, plaintiff alleged AOC was in a position to provide money damages and restoration of employment benefits to her. Caudill prayed for compensatory damages "from the defendants," including back wages and reinstatement of fringe benefits; that her actual damages be trebled; that she be reinstated to her former position; and that she recover her costs, including reasonable attorneys' fees.

In November 1995, the trial court dismissed Caudill's claims against defendants AOC and Bowman for common law wrongful discharge and for monetary relief against them under 42 U.S.C. § 1983. Caudill did not appeal from that dismissal. On 19 May 1997, summary judgment was entered for defendants AOC and Bowman on all the remaining claims against them. On 3 June 1997, summary judgment was entered for defendant Dellinger on the claim under the Whistleblower Act, but denied as to the remaining causes of action against him. Both Caudill and Dellinger appealed from the entries and denial of summary judgment.

*Elliot, Pishko, Gelbin & Morgan, P.A., David C. Pishko, for plaintiff appellant.*

*White and Crumpler, by Dudley A. Witt and Laurie A. Schlossberg, for James L. Dellinger, defendant appellant-appellee.*

*Attorney General Michael F. Easley, by Assistant Attorney General Robert M. Curran, for C. Ricky Bowman and Administrative Office of the Courts, defendant appellees.*

CAUDILL v. DELLINGER

[129 N.C. App. 649 (1998)]

HORTON, Judge.

This appeal presents the following issues for decision: (I) whether Caudill forecast sufficient evidence to support her claim against Dellinger under the North Carolina Whistleblower Act; (II) whether Caudill forecast sufficient evidence to support her claim against Dellinger for common law wrongful discharge; (III) whether Caudill may bring claims against Dellinger, in his individual capacity, for violations of her rights to free speech and to due process of law under the North Carolina Constitution; (IV) whether Caudill may bring claims against Dellinger, in his individual capacity, for deprivation of her rights to free speech and due process under the United States Constitution in violation of 42 U.S.C. § 1983; and (V) whether plaintiff Caudill forecast sufficient evidence to support any of her claims against AOC and Bowman, and to resist those defendants' motions for summary judgment. We will first discuss plaintiff's claims against former District Attorney Dellinger, combining for discussion the two claims based on the North Carolina Constitution, and combining the two § 1983 claims.

### (I) The Whistleblower Act

[1] Chapter 126 of the North Carolina General Statutes (State Personnel System) was enacted in 1965 for the express purpose of "establish[ing] for the government of the State a system of personnel administration under the Governor . . . ." N.C. Gen. Stat. § 126-1 (Cum. Supp. 1997). Chapter 126 created the State Personnel Commission and gave it power to establish rules and policies governing personnel matters. *N.C. Dept. of Justice v. Eaker*, 90 N.C. App. 30, 34, 367 S.E.2d 392, 395, *disc. review denied*, 322 N.C. 836, 371 S.E.2d 279 (1988). Various categories of employees, including constitutional officers of the state, were exempted from portions of the Act. Other categories, including public school employees, and community college employees, were totally exempted from the Act. In 1989, Chapter 126 was amended by Chapter 236 of the 1989 Session Laws (Senate Bill 125), entitled "AN ACT TO ENCOURAGE REPORTING OF FRAUD, WASTE, AND ABUSE IN STATE GOVERNMENT AND ENDANGERMENT TO THE PUBLIC HEALTH AND SAFETY, AND TO PROTECT INFORMANT STATE EMPLOYEES FROM RETALIATION." Senate Bill 125 added Article 14, popularly known as the "Whistleblower Act," to Chapter 126. Senate Bill 125 amended the provisions of Chapter 126 which set out numerous categories of exempt employees, by adding the following language: "(c5) Notwithstanding any

other provision of this Chapter, Article 14 of this Chapter shall apply to all State employees, public school employees, and community college employees."

The trial court granted defendant Dellinger's motion for summary judgment on the "Whistleblower" claim, apparently at least partially on the theory that the provisions of the Act do not apply to constitutional officers of the state under N.C. Gen. Stat. § 126-5(c1)(1) (Cum. Supp. 1997), which provides that "Constitutional officers of the State" are exempt from the provisions of Chapter 126 (except for two articles not pertinent to this appeal). Likewise, N.C. Gen. Stat. § 126-5(c1)(2) exempted "Officers and employees of the Judicial Department." Defendant Dellinger was a district attorney at all times pertinent hereto, and all parties agree that he was a constitutional officer of the state pursuant to Article IV, Section 18, of the North Carolina Constitution. Plaintiff was administrative assistant to the District Attorney pursuant to the provisions of N.C. Gen. Stat. § 7A-68 (1995), and thus was an employee within the Judicial Department. N.C. Gen. Stat. § 126-5(c5), the pertinent provision of the Whistleblower Act, makes it clear, however, that the protection of the Act applies to all state employees, regardless of any other provision of Chapter 126. N.C. Gen. Stat. § 126-5(c5). We note that N.C. Gen. Stat. § 126-5(c5) also specifically includes public school employees and community college employees, two groups which were excluded prior to the amendment.

The legislative intent that the protections of this legislation apply to all state employees is clear; and we hold, therefore, that the provisions of the Whistleblower Act apply to plaintiff Caudill. The Act provides, in pertinent part, that "[n]o head of any State department, agency or institution or other State employee exercising supervisory authority shall discharge . . ." a state employee because of a report of activities described in the Act. N.C. Gen. Stat. § 126-85(a) (Cum. Supp. 1997). Caudill served at the pleasure of the District Attorney and under his direct supervision. The Act authorizes an action against "the *person* or agency *who committed the violation* . . . ." N.C. Gen. Stat. § 126-86 (1995) (emphasis added). Here, Caudill contends Dellinger committed a violation of the Act by discharging her for protected activity. She brings this action against Dellinger individually, as the "person . . . who committed the violation" of the Act. It would be contrary to the intent and spirit of the Whistleblower Act that Caudill be denied relief merely because Dellinger, as a constitutional officer, is exempted from certain other portions of the Chapter which have no

CAUDILL v. DELLINGER

[129 N.C. App. 649 (1998)]

relationship to the Whistleblower provisions. *See In Re Filing by Fire Ins. Rating Bureau*, 275 N.C. 15, 34, 165 S.E.2d 207, 220 (1969) (statute is to be construed in light of the purpose to be accomplished by the legislation). Our construction of the Act results in no conflict between the two sections in question, and tends to suppress the evil which the legislature intended to prevent by this remedial legislation. *In re Hardy*, 294 N.C. 90, 96, 240 S.E.2d 367, 372 (1978).

Further, even if we assume *arguendo* that the two provisions in question are *in pari materia*, but are in irreconcilable conflict, the provisions of N.C. Gen. Stat. § 126-5(c5) were added later in time and will control. *State v. Hutson*, 10 N.C. App. 653, 657, 179 S.E.2d 858, 861 (1971). Application of that general rule of construction would seem to be especially appropriate in this case, since N.C. Gen. Stat. § 126-5(c5) provides that Article 14 applies to all state employees "[n]otwithstanding any other provision of . . . Chapter [126]."

Further, plaintiff's forecast of evidence makes out a *prima facie* claim under the Whistleblower Act. Such a claim consists of the following elements: "(1) [plaintiff] engaged in protected activity, (2) followed by an adverse employment action, and (3) that the protected conduct was a substantial or motivating factor in the adverse action." *Hanton v. Gilbert*, 126 N.C. App. 561, 571, 486 S.E.2d 432, 439 (citation omitted), *disc. review denied*, 347 N.C. 266, 493 S.E.2d 454 (1997). In this case, Caudill has forecast evidence tending to show that she was performing satisfactorily as Dellinger's administrative assistant until she talked with SBI agents in connection with their official investigation of Dellinger, when Dellinger learned of her actions he discharged her almost immediately, and her cooperation with SBI agents was a substantial or motivating factor in the decision to discharge her. As required by the holding in *Hanton*, Dellinger forecast evidence in support of his motion for summary judgment tending to show that he discharged Caudill " 'based on a legitimate non-retaliatory motive,' " because of her change in attitude, negative comments she had made about him, and his loss of confidence in her loyalty. *Id.* Caudill meets her burden in her deposition testimony of "coming forward with evidence that her alleged whistleblowing activity was a substantial causative factor for her dismissal." *Id.* The question of causation raises a genuine question of fact for the jury, so that summary judgment for defendant Dellinger was improvidently granted and must be reversed.

## II. Common Law Wrongful Discharge

**[2]** Plaintiff Caudill was employed by defendant Dellinger as an administrative assistant "to serve at his pleasure." N.C. Gen. Stat. § 7A-68 (1995). Dellinger contends he "retained complete discretion in the evaluation of [Caudill's] job performance and her job security," and was "acting in his official capacity [in terminating her employment] and is entitled to absolute immunity."

Although plaintiff served at the "pleasure" of District Attorney Dellinger and was thus an "at will" employee, this Court recognized an exception to the common law employment-at-will doctrine in *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. reviews denied*, 314 N.C. 331, 333 S.E.2d 490, *disc. review denied*, 314 N.C. 331, 335 S.E.2d 13 (1985). In *Sides*, plaintiff was terminated in alleged retaliation for refusing to testify untruthfully in a medical malpractice case. This Court identified a cause of action for wrongful discharge in violation of public policy:

> [W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent. We hold, therefore, that no employer in this State, notwithstanding that an employment is at will, has the right to discharge an employee and deprive him of his livelihood without civil liability because he refuses to testify untruthfully or incompletely in a court case, as plaintiff alleges happened here.

*Id.* at 342, 328 S.E.2d at 826.

In *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989), our Supreme Court adopted the public policy exception to the employment-at-will doctrine. In *Coman*, plaintiff was allegedly discharged for refusing to operate his vehicle excessive hours and refusing to falsify certain records in violation of U.S. Department of Transportation regulations. Our Supreme Court held it was the public policy of this state to protect the safety of persons and property on the highways, and plaintiff's claim for wrongful discharge should not have been dismissed by the trial court.

In the present case, plaintiff Caudill forecast evidence from which a jury could find she was discharged for giving truthful infor-

mation about Dellinger's expense accounts and falsification of bank documents to SBI agents. It is the public policy of this state that citizens cooperate with law enforcement officials in the investigation of crimes. Here, SBI agents were investigating serious allegations against Dellinger, including misappropriation of state funds through false requests for reimbursements of expenses. Plaintiff's cooperation with those agents in giving them information relative to their investigation was clearly protected activity which furthered the public policy of this state. Plaintiff has presented evidence which could support a claim for common law wrongful discharge.

Dellinger pleaded sovereign immunity as an absolute bar to plaintiff's claim, and argues he is entitled to absolute immunity regardless of his intent in discharging plaintiff. At the time of plaintiff's discharge, Dellinger was a district attorney, a constitutional officer of the state. We do not agree, however, that he is entitled to the defense of sovereign immunity if he was acting outside the scope of his authority as a district attorney. Here, the SBI was investigating possible violations of state law by Dellinger in filing incorrect expense reports and falsifying certain bank documents. Plaintiff has also offered evidence tending to show that when Dellinger learned of her statements to the SBI, he became angry and discharged her. If the jury agrees that Dellinger discharged plaintiff for cooperating with the SBI, then he was clearly acting outside the scope of his official duties (which included the investigation and prosecution of crimes against the state), and he is not entitled to the protection of the sovereign immunity defense. The question is for the jury, and the trial judge properly denied Dellinger's motion for summary judgment on this claim.

### III. Violations of North Carolina Constitution

[3] Plaintiff also contends Dellinger violated her rights to free speech and due process under sections 14 and 19 of the North Carolina Constitution. Plaintiff sued Dellinger in his individual capacity as evidenced by the caption and allegations of the complaint. Plaintiff may not, however, successfully maintain an action against Dellinger in his individual capacity for alleged violations of her rights under the North Carolina Constitution. As explained in *Corum, supra,*

The Constitution only recognizes and secures an individual's rights vis-a-vis "We, the people of the State of North Carolina," not individual members of that body politic. Of course, the State may only act through its duly elected and appointed officials.

Consequently, it is the state officials, acting in their official capacities, that are obligated to conduct themselves in accordance with the Constitution. Therefore, plaintiff may assert his freedom of speech right only against state officials, sued in their official capacity.

*Corum*, 330 N.C. at 788, 413 S.E.2d at 293.

The trial court should have granted Dellinger's motion for summary judgment as to plaintiff's claims against him, which were based on alleged violations of the North Carolina Constitution. The trial court's failure to do so was error.

### IV. Section 1983 Claims

[4] Plaintiff contends Dellinger violated her rights to free speech and due process under Amendments 1 and 14 to the United States Constitution, in violation of 42 U.S.C. § 1983, which provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Dellinger pleaded sovereign immunity as a defense to these claims, and contends he is entitled to absolute immunity because his actions in discharging plaintiff were in the scope of his duties as District Attorney. Sovereign immunity alleged under state law, however, is not a defense to an action under Section 1983. *Martinez v. California*, 444 U.S. 277, 284 n.8, 62 L. Ed. 2d 481, 488 n.8 (1980); *Howlett v. Rose*, 496 U.S. 356, 110 L. Ed. 2d 332 (1990). Although Dellinger now argues the defense of qualified immunity, he does not assert that defense in his pleadings and it is not before us.

### V. Claims against AOC and Bowman

[5] Although plaintiff does not now contend that either AOC or Bowman is guilty of discrimination or other wrongdoing in connection with her discharge, she contends both AOC and Bowman are necessary parties to this litigation. Otherwise, plaintiff contends, if she is successful in this litigation, she will not be able to secure such relief as reinstatement, payment of back wages, or other employment benefits. We disagree.

CAUDILL v. DELLINGER

[129 N.C. App. 649 (1998)]

Although plaintiff contends she only seeks equitable relief against defendants AOC and Bowman, her amended complaint prays for compensatory and treble damages against *all* defendants. As this Court held in *Minneman v. Martin*, 114 N.C. App. 616, 619, 442 S.E.2d 564, 566 (1994), there is no "forecast [of] evidence of wrongdoing" against either defendant. *Id.* at 620, 442 S.E.2d at 567. The claim in *Minneman* was also based on alleged violations of the Whistleblower Act. In that case, plaintiff Sue Minneman complained she was denied a promotion by defendant Barrett, Director of John Umstead Hospital, and defendant Irigaray, Clinical Director, John Umstead Hospital, because of her "whistle-blowing" about the treatment of patients. Plaintiff Minneman also included as parties Governor James G. Martin; David T. Flaherty, as Secretary of the Department of Human Resources; Don Taylor, as Director of the Division of Mental Health, Mental Retardation, Substance Abuse Services of the State of North Carolina (Mental Health); and Dr. Walter W. Stelle, as Deputy Director of Mental Health. Minneman conceded Martin, Flaherty, Taylor, and Stelle had committed no violations of the Whistleblower Act, but contended they should remain as parties "in their official capacities solely to ensure the enforcement of any prospective equitable relief granted by the courts." *Id.* This Court held, however, that since none of the parties sued in their official capacities "had any part in the alleged Whistleblower violations[,]" the trial court should have granted summary judgment in their favor.

Plaintiff contends, however, that if AOC and Bowman are not continued as parties, her range of remedies will be impermissibly limited, and she may be denied such remedies as reinstatement to her former position, back wages, and medical benefits. We find the reasoning of our Supreme Court in *Corum* to be instructive:

[T]he common law provides a remedy for the violation of plaintiff's constitutionally protected right of free speech. What that remedy will require, if plaintiff is successful at trial, will depend upon the facts of the case developed at trial. It will be a matter for the trial judge to craft the necessary relief. . . . When called upon to exercise its inherent constitutional power to fashion a common law remedy for a violation of a particular constitutional right, however, the judiciary must recognize two critical limitations. First, it must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power. Second, in exercising that power, the judiciary must minimize the encroachment upon other

branches of government—in appearance and in fact—by seeking the least intrusive remedy available and necessary to right the wrong.

*Corum*, 330 N.C. at 784, 413 S.E.2d at 290-91 (citation omitted).

In the instant case, Dellinger resigned the office of District Attorney in April 1995 and Bowman became the District Attorney. Plaintiff filed this action on 5 May 1995. If successful in this litigation, plaintiff may collect money damages from Dellinger. Plaintiff cannot be reinstated to her former position, however, since Dellinger had resigned and Bowman is entitled by statute to an administrative assistant to serve "at his pleasure." N.C. Gen. Stat. § 7A-68. Thus, the continuation of AOC and Bowman as parties to this litigation adds nothing to plaintiff's range of remedies against Dellinger.

There being no evidence of any violations by AOC or Bowman in the case *sub judice*, the trial court properly granted summary judgment for both defendants on all claims.

In summary, the trial court correctly dismissed all plaintiff's claims against AOC and Bowman, and the trial court correctly denied Dellinger's motions for summary judgment against plaintiff on her claims for wrongful discharge and her claims under Section 1983. The trial court erroneously granted Dellinger's motion for summary judgment on the claim under the Whistleblower Act, and further erred in denying Dellinger's motion for summary judgment on the claims based on violations of the North Carolina Constitution.

Reversed and remanded.

Judge GREENE concurs.

Judge LEWIS dissents.

Judge LEWIS dissenting.

I respectfully dissent only as to Part I of the majority opinion; I concur in all other parts.

Mr. Dellinger, a former district attorney, was sued in his official capacity for violating G.S. § 126-85, also known as the "whistleblower" statute. Section 126-85 is contained within Article 14 of Chapter 126 of the General Statutes. I believe the General Assembly has excepted constitutional officers such as Mr. Dellinger from the

provisions of Article 14. I reach this conclusion because I do not believe that constitutional officers are "State employees" as that term is used in G.S. 126-5(c5) and G.S. 126-85.

General Statute section 126-5(c1) states that, except as to Articles 6 and 7, the provisions of Chapter 126 shall not apply to "(1) Constitutional officers of the State[,] (2) Officers and employees of the Judicial Department[,] (3) Officers and employees of the General Assembly[,]" and various other persons. As the majority correctly notes, district attorneys are constitutional officers of the State. Section 126-5(c1) provides that constitutional officers are not subject to Article 14.

I cannot agree that G.S. 126-5(c5) requires a contrary result. Section 126-5(c5) reads, "Notwithstanding any other provision of this Chapter, Article 14 of this Chapter shall apply to all State employees, public school employees, and community college employees." Although the term "State employees" is not expressly defined in Chapter 126, I believe that the legislature did not intend that term to include constitutional officers.

As noted above, an earlier subsection of the same statute lists officers and employees separately: G.S. 126-5(c1) states that the provisions of Chapter 126 do not apply to "*officers and employees* of the Judicial Department," or to "*officers and employees* of the General Assembly" (emphasis added). This demonstrates that the terms "officers" and "employees" were not intended to be synonymous.

When it enacted G.S. 126-5(c5) in 1989, the legislature could have expressly included "officers of the Judicial Department," "officers of the General Assembly," and "constitutional officers of the State" among the persons subject to Article 14. It did not. Instead, the legislature used the term "State employees," a term which does not embrace or include "officers."

Nothing in G.S. 126-85(a) suggests otherwise. That statute reads in relevant part,

No head of any State department, agency or institution or other State employee exercising supervisory authority shall discharge, threaten, or otherwise discriminate against a State employee regarding the State employee's compensation, terms, conditions, location or privileges of employment because the State employee . . . reports . . . any activity described in G.S. 126-84 . . . .

A district attorney is not the "head of any State department, agency or institution." While a district attorney does exercise supervisory authority over his administrative assistant, *see* N.C. Gen. Stat. § 7A-68(a) (1995), there is no indication in G.S. 126-85(a) that a district attorney—a constitutional officer of the State—is a "State employee" as contemplated by the legislature.

For the foregoing reasons, I believe that constitutional officers are excepted from the "whistleblower" statute. Why the legislature did not create a "whistleblower" statute without any exceptions is not before us, and could not be.

I respectfully dissent.