GLENN I. HODGE, JR., Plaintiff v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant

No. COA04-1657

(Filed 20 December 2005)

**1. Public Officers and Employees— reinstatement to former position—Whistleblower Act—employee grievance matters**

The trial court did not err by concluding the Whistleblower Act does not apply to plaintiff employee's 1998 suit seeking reinstatement to his former position even though plaintiff contends it constitutes reporting to "another appropriate authority" the violation of a rule or regulation under the Whistleblower Act, because: (1) the lawsuit did not concern matters affecting general public policy; (2) the definition of a protected activity is

**HODGE v. N.C. DEP'T OF TRANSP.**

[175 N.C. App. 110 (2005)]

not extended to individual employment actions that do not implicate broader matters of public concern; and (3) the General Assembly did not intend N.C.G.S. § 126-84 to protect a State employee's right to institute a civil action concerning employee grievance matters.

## 2. Public Officers and Employees— unlawful retaliation and discrimination—legitimate nonretaliatory reasons

The trial court did not err by granting summary judgment in favor of defendant employer North Carolina Department of Transportation (NCDOT) based on its conclusion that there was no genuine issue of material fact in a suit where plaintiff employee alleged unlawful retaliation and discrimination by NCDOT based on plaintiff's reporting and litigating unlawful and improper actions and seeking injunctive relief, damages, payment of back wages, full reinstatement of fringe benefits, costs, and attorney fees, because: (1) assuming arguendo that plaintiff engaged in a protected activity, NCDOT presented legitimate nonretaliatory reasons for all of the actions it has taken; and (2) plaintiff acknowledged in his deposition testimony that there were legitimate explanations for the actions he alleged were retaliatory.

## 3. Public Officers and Employees— employer retaliation— failure to submit position for upgrade

Although plaintiff employee contends the trial court erred by dismissing plaintiff's claim regarding defendant employer's failure to submit the Chief Internal Auditor position for upgrade, this assignment of error is overruled because: (1) plaintiff was not a state employee when the position was not submitted for upgrade, and thus, he cannot seek relief under the Whistleblower statute; and (2) it is not logical to believe that NCDOT failed to seek a necessary upgrade of the position in order to retaliate against plaintiff who did not occupy the position at the time of the upgrades in other State government agencies on the chance that plaintiff would again occupy that position at some point in the future.

Appeal by plaintiff from judgments entered 16 and 17 September 2004 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 17 October 2005.

HODGE v. N.C. DEP'T OF TRANSP.

[175 N.C. App. 110 (2005)]

*Biggers & Hunter, PLLC, by John C. Hunter, for plaintiff-appellant.*

*Roy A. Cooper, III, Attorney General, by Alexandra M. Hightower, Assistant Attorney General, for the North Carolina Department of Justice Transportation Section.*

MARTIN, Chief Judge.

Plaintiff was originally employed by the North Carolina Department of Transportation (DOT) in January 1992 as an internal auditor and was promoted to Chief of the Internal Audit section in May of that year. In May of 1993, the position was reclassified, pursuant to N.C. Gen. Stat. § 126-5(d), as policy making exempt, and plaintiff challenged the reclassification through a contested case hearing with the Office of Administrative Hearings (OAH) in November of 1993. On 3 December 1993, plaintiff was terminated from his position, but not informed of his eligibility for priority re-employment pursuant to N.C. Gen. Stat. § 126-5(e).

Following proceedings before the OAH, State Personnel Commission, Wake County Superior Court, and this Court, in March of 1998, the North Carolina Supreme Court determined that the position had been improperly classified as policy making exempt. *N.C. Dept. of Transportation v. Hodge*, 347 N.C. 602, 607, 499 S.E.2d 187, 190 (1998). On 2 May 1998, DOT reinstated plaintiff in a new position, Internal Auditor II in the External Audit branch, paying him at his previous pay rate because someone else had been employed in his former position. Plaintiff was also awarded back pay.

On 24 July 1998, plaintiff filed suit in Wake County Superior Court seeking to compel his reinstatement as Chief Internal Auditor. The trial court granted summary judgment, ordering that plaintiff be reinstated as Chief Internal Auditor. DOT appealed, and a divided panel of this Court reversed. *Hodge v. N.C. Dep't of Transp.*, 137 N.C. App. 247, 254, 528 S.E.2d 22, 27 (2000). The Supreme Court, however, reversed this Court on 6 October 2000, and effectively granted injunctive relief in plaintiff's favor. *Hodge v. N.C. Dep't of Transp.*, 352 N.C. 664, 535 S.E.2d 32 (2000) (per curiam). Plaintiff was reinstated as Chief Internal Auditor on 30 October 2000.

The present appeal concerns a complaint filed by plaintiff on 4 June 2003, in which he claims unlawful retaliation and discrimination by DOT due to his "reporting and litigating unlawful and improper

actions," and seeking "injunctive relief, damages, payment of back wages, full reinstatement of fringe benefits, costs and attorney's fees." The retaliatory actions alleged in the complaint begin at plaintiff's termination, when plaintiff alleges DOT denied him the opportunity to priority re-employment by not posting vacancies until after his rights to such re-employment had expired. After he was reinstated, plaintiff alleges that a pattern of retaliation continued, including not being given the following: 1) an adequate work space; 2) a computer with up-dated software; 3) training regarding either the procedures or computer equipment in the unit he was working in; and 4) an access number to the DOT database to gain information useful to complete assignments. DOT contends that it provided plaintiff with office space, computer equipment, and training comparable to others in plaintiff's division. Moreover, DOT maintains that plaintiff did not notify his supervisor, Robert Clevenger, that he did not have an access number until after his work performance was criticized, and immediately after plaintiff notified Clevenger that he needed such a number, Clevenger provided it. In his deposition, plaintiff conceded that his space and equipment were similar to others in his position and adequate to perform his duties.

Plaintiff alleged that he did not receive any indication of unsatisfactory work performance until appearing in court on 24 August 1998 for his complaint seeking reinstatement as Chief Internal Auditor. On 4 November 1998, Clevenger noted in an "interim" review of plaintiff's work plan that plaintiff was having difficulty turning in his assignments on time; plaintiff contends he informed Clevenger this was a result of the adverse conditions. Plaintiff did not submit any complete audits to Clevenger for review subsequent to 11 November 1998 because he determined it was in his best interest not to submit work until the adverse conditions were eliminated.

Ostensibly due to plaintiff's failure to submit work after 11 November, he received an unsatisfactory performance rating on 26 April 1999. As a result, plaintiff was denied a three percent pay increase and the associated benefit increases which would have been effective 1 July 1999, and he received a formal written warning notifying him of the need to improve and informing him that further disciplinary action could include dismissal. Plaintiff received an additional written warning on 30 June 1999, and participated in another counseling session on 18 August 1999 regarding his poor performance. He maintains that he continued to ask that the discriminatory conditions be remedied, but that his supervisors took no action.

Plaintiff was placed on paid administrative leave following a pre-disciplinary conference on 14 October 1999. On 28 October plaintiff received another written warning for unsatisfactory performance via certified mail, which informed him that C. Wayne Stallings, Chief Financial Officer, had directed Clevenger and Clevenger's supervisor, Bruce Dillard, to place him in computer classes, review his job description and processes, investigate options regarding office space, and establish a mutually agreed-upon work plan, with expected completion dates for his assignments. The prior unsatisfactory performance rating was not removed, however, so that plaintiff remained at risk of being terminated for cause.

On 14 April 2000, plaintiff had a second unsatisfactory performance review and was denied a two percent pay increase. On 1 July 2000, plaintiff received a cost of living pay increase, and on 5 August 2000, the salary range for plaintiff's position was revised, so that he received a 4.16 percent salary increase. Plaintiff also received the bonuses and cost of living increases granted to all State employees by the General Assembly.

Plaintiff alleges that, due to his action in reporting violations of state law and regulations and pursuing litigation against DOT, defendant 1) denied cumulative pay increases of three percent and two percent; 2) devised a scheme to rate plaintiff's work unsatisfactory and to have such a rating entered in plaintiff's permanent personnel record; 3) filled his personnel record with numerous written warnings and counseling notices due to alleged unsatisfactory performance; 4) attempted to discharge him; and 5) made false allegations to plaintiff's coworkers that his job performance was unsatisfactory and that he was about to be terminated. DOT notes that the warnings for unsatisfactory job performance in plaintiff's personnel folder are no longer active, and plaintiff admitted in his deposition that they were no longer in effect.

Plaintiff further alleges that the position of Chief Internal Auditor, which, due to its complexity, had historically been graded above Chief Internal Auditor positions in other State government agencies, was now graded below Chief Internal Auditor positions in those agencies. He maintains defendant's failure to upgrade the position was a deliberate attempt to limit his back pay. He contends that these allegations illustrate a pattern and practice of retaliating against employees who report improper activities to the appropriate authorities.

**HODGE v. N.C. DEP'T OF TRANSP.**

[175 N.C. App. 110 (2005)]

On 16 September 2004, the trial court granted partial summary judgment in favor of DOT, dismissing the entire complaint with the exception of the allegations regarding plaintiff's unsatisfactory performance rating for the year ending March 31, 1999, allegedly in retaliation for the suit filed on 24 July 1998. The trial court limited evidence on that claim to "acts and events occurring and arising on or after January 20 1999, which is one year prior to the filing of Plaintiff's previous suit" citing N.C. Gen. Stat. § 126-86 (2003), requiring claims under N.C. Gen. Stat. § 126-85 be brought within one year of the violation.

Then on 17 September 2004, the trial court granted defendant summary judgment on the remaining claims because:

> **First**, the Court finds and concludes as a matter of law, that the institution of civil actions by State Employees to secure their employment rights allegedly violated by a state agency such as the NCDOT, or the institution of administrative proceedings in the Office of Administrative Hearings, are **NOT** acts which trigger the right to sue for retaliation under The Whistleblower Act, particularly G.S. 126-84. This determination also applies to any claims arising prior to January 21, 1999.
>
> **Second**, assuming[] *arguendo* that The Whistleblower Act would be triggered by the filing of a civil action or an administrative proceeding relating to the terms and conditions of employment under the State Personnel Act, the record does not support any of plaintiff's alleged claims for retaliation in violation of G.S. 126-84, et seq. from January 21, 1999 forward.

Plaintiff appeals.

---

Plaintiff presents three arguments on appeal: 1) the trial court erred in concluding the Whistleblower Act does not apply; 2) the trial court erred in concluding there was no genuine issue of material fact; and 3) the failure to upgrade his position was a continuing adverse effect of DOT's retaliation and, therefore, the trial court erred in concluding those claims were barred by the statute of limitations. We have carefully considered plaintiff's arguments in light of the record and affirm the judgment of the trial court.

"Summary judgment is properly entered when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and that the movant is

entitled to judgment as a matter of law." *Evans v. Cowan*, 132 N.C. App. 1, 5, 510 S.E.2d 170, 173 (1999); N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). Section 126-84 of our General Statutes (the Whistleblower Act)

> requires plaintiffs to prove, by a preponderance of the evidence, the following three essential elements: (1) that the plaintiff engaged in a protected activity, (2) that the defendant took adverse action against the plaintiff in his or her employment, and (3) that there is a causal connection between the protected activity and the adverse action taken against the plaintiff.

*Newberne v. Department of Crime Control & Pub. Safety*, 359 N.C. 782, 788, 618 S.E.2d 201, 206 (2005).

[1] By his first argument, plaintiff contends that his 1998 suit seeking reinstatement into his former position constitutes reporting to "another appropriate authority" the violation of a rule or regulation under the Whistleblower Act. He contends that DOT violated N.C. Admin. Code tit. 25 r. 1B.0428 (September 1987), which requires a dismissed employee be returned to employment "in the same or similar position, at the same pay grade and step." Thus, he maintains that DOT retaliated against him for protected conduct under the Whistleblower Act. We disagree.

The Whistleblower Act establishes that it is state policy to encourage its employees to report violations of state or federal law, rules or regulation; fraud; misappropriation of state resources; "[s]ubstantial and specific danger to the public health and safety; or [g]ross mismanagement, a gross waste of monies, or gross abuse of authority;" and it further protects State employees from intimidation or harassment when they report on "matters of public concern." N.C. Gen. Stat. § 126-84 (2003). Employees who report activities under this statute are protected from retaliation under N.C. Gen. Stat. § 126-85 (2003).

This Court has applied Whistleblower protection to employees who bring suit alleging sex discrimination, *Wells v. N.C. Dep't of Corr.*, 152 N.C. App. 307, 313, 567 S.E.2d 803, 808 (2002) (plaintiff sought protection from retaliation after reporting sexual harassment); who allege retaliation after cooperating in investigations regarding misconduct by their supervisors, *Caudill v. Dellinger*, 129 N.C. App. 649, 655, 501 S.E.2d 99, 103 (1998) (employee terminated after cooperating with State Bureau of Investigation regarding misconduct by her supervisor was able to make out a *prima facie* case

**HODGE v. N.C. DEP'T OF TRANSP.**

[175 N.C. App. 110 (2005)]

under N.C. Gen. Stat. § 126-84), *aff'd* 350 N.C. 89, 511 S.E.2d 304 (1999); *see also Minneman v. Martin,* 114 N.C. App. 616, 617, 442 S.E.2d 564, 565 (1994) (plaintiff alleged retaliation due to her participation in investigation of supervisor's mis-treatment of dental patients at a state hospital); and who allege police misconduct, *Newberne,* 359 N.C. at 797, 618 S.E.2d at 211 (plaintiff reported to his supervisor that fellow troopers exercised gross abuse of authority in the apprehension and arrest of a suspect); *see also Swain v. Elfland,* 145 N.C. App. 383, 385, 550 S.E.2d 530, 533 (plaintiff alleged that adverse employment actions were taken against him due to his reporting of improper police procedures and obstruction of justice), *cert. denied,* 354 N.C. 228, 554 S.E.2d 832 (2001).

The Act has also been raised when "alleged whistleblowing" related to misappropriation of governmental resources. *See Hanton v. Gilbert,* 126 N.C. App. 561, 564, 486 S.E.2d 432, 435 (a dispute over the policy regarding the use of equipment purchased with federal grant money), *disc. review denied,* 347 N.C. 266, 493 S.E.2d 454 (1997); *see also Kennedy v. Guilford Tech. Community College,* 115 N.C. App. 581, 582, 448 S.E.2d 280, 281 (1994) (employee claimed violation of Whistleblower Act due to her transfer to a different position after reporting misuse and misappropriation of state property, the library's audio-visual equipment), *overruled in part by Newberne,* 359 N.C. at 790, 618 S.E.2d at 207; *Aune v. University of North Carolina,* 120 N.C. App. 430, 431, 462 S.E.2d 678, 680 (1995) (plaintiff sought protection under Whistleblower Act after reporting possible conflicts of interest among staff members and potential appropriation of state resources for private gain), *disc. review denied,* 342 N.C. 893, 467 S.E.2d 901 (1996).

In all of these cases, the protected activities concerned reports of matters affecting general public policy. In this case, plaintiff's "report" was his 1998 lawsuit seeking reinstatement to his former position. The central allegations of the 1998 lawsuit related only tangentially at best to a potential violation of the North Carolina Administrative Code. As such, the lawsuit did not concern matters affecting general public policy. We decline to extend the definition of a protected activity to individual employment actions that do not implicate broader matters of public concern. We do not believe the General Assembly intended N.C. Gen. Stat. § 126-84 to protect a State employee's right to institute a civil action concerning employee grievance matters. This assignment of error is overruled.

**[2]** Plaintiff's second argument, that summary judgment was inappropriate because there was a genuine issue of material fact, also fails. Assuming *arguendo* that plaintiff engaged in a protected activity, DOT presented legitimate, non-retaliatory reasons for all of the actions it has taken, *Wells*, 152 N.C. App. at 317, 567 S.E.2d at 811, and in his deposition testimony, plaintiff acknowledged that there were legitimate explanations for the actions he alleged were retaliatory. For example, he conceded that his office space and equipment when he returned to work were not less than others occupying the same position. He admitted that he was not denied training after he requested it, nor did his computer equipment or lack of computer classes inhibit his ability to do his job. He also admitted that he had been warned about his missing work prior to the counseling memo but that he assumed his supervisor was "out to get him;" therefore, he stopped turning in work.

**[3]** By his final argument, plaintiff contends the trial court erroneously limited him to presenting evidence "occurring or arising on or after January 20 1999" one year prior to the filing of his previous suit, which he submitted to a voluntary dismissal. We note that plaintiff's brief only argues that DOT's failure to submit the Chief Internal Auditor position for upgrade constitutes continuing harm; he does not contend that the other allegations excluded by the partial summary judgment order were erroneously dismissed. Therefore, we only examine whether the trial court erred in dismissing the claim regarding the position upgrade. N.C. R. App. P. 28 (b)(6).

Section 126-86 provides, in pertinent part, that State employees who are retaliated against for reporting activities enumerated in the Whistleblower Act "may maintain an action in superior court for damages, an injunction, or other remedies provided in this Article against the person or agency who committed the violation within one year after the occurrence of the alleged violation of this Article. . . ." N.C. Gen. Stat. § 126-86 (2003). Since plaintiff was not a State employee when the position was not submitted for upgrade, he cannot seek relief under the statute. It is not logical to believe that DOT failed to seek a necessary upgrade of the position in order to retaliate against plaintiff, who did not occupy the position at the time of the upgrades, on the chance that plaintiff would again occupy that position at some point in the future. Accordingly, this argument is overruled.

After our careful review of the record, we hold that there is no genuine issue of material fact regarding the alleged retaliatory acts. Moreover, plaintiff has failed to show a causal connection between

the filing of his suit and DOT's alleged retaliation. Accordingly, we affirm the trial court's grant of summary judgment.

Affirmed.

Judges HUNTER and STEELMAN concur.