TONDI HOLT, Plaintiff v. ALBEMARLE REGIONAL HEALTH SERVICES BOARD, AND JERRY L. PARKS, IN HIS OFFICIAL CAPACITY AS HEALTH DIRECTOR, Defendants

No. COA07-262

(Filed 15 January 2008)

**1. Public Officers and Employees— retaliatory discharge— whistleblower action—conduct not protected**

Summary judgment was correctly granted for defendants in a whistleblower action alleging retaliatory discharge where plaintiff was not able to establish that her conduct was protected within the meaning of the Whistleblower Act. Plaintiff alleged

protected activity in stating that she would testify truthfully if a dismissed employee brought litigation, but the dispute ultimately was an individual termination action that did not implicate broader matters of public policy.

**2. Public Officers and Employees— retaliatory discharge— whistleblower action—legitimate reason for discharge**

Summary judgment was properly granted in a whistleblower action where defendant offered a legitimate, nonretaliatory reason for plaintiff's discharge. Plaintiff, who worked for a regional health services board, committed a breach of confidentiality in disclosing patient records, and there was also evidence that termination was appropriate.

**3. Public Officers and Employees— retaliatory discharge— whistleblower action—no issue of pretext**

Summary judgment was properly granted in a whistleblower action for retaliatory discharge where, after defendants established a nonretaliatory reason for the discharge, plaintiff was not able to raise a factual issue of pretext.

Appeal by plaintiff from an order entered 20 November 2006 by Judge Clifton W. Everett, Jr. in Pasquotank County Superior Court. Heard in the Court of Appeals 1 November 2007.

*Hornthal, Riley, Ellis & Maland, L.L.P., by John D. Leidy, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, PLLC, by James R. Morgan, Jr. and Mary Nell Craven, for defendant-appellees.*

HUNTER, Judge.

Tondi Holt ("plaintiff") appeals the trial court's grant of Albermarle Regional Health Services Board's ("ARHS") and Jerry L. Parks's ("Parks") (collectively "defendants") motion for summary judgment. After careful consideration, we affirm.

In early 2004, plaintiff was employed as a Finance Officer for ARHS. She was also involved with the personnel department and helped develop and implement agency policies. ARHS is a district health department and a public authority under N.C. Gen. Stat. § 130A-36(a) (2005) and N.C. Gen. Stat. § 159-7(b)(1) (2005). As a state institution, ARHS is barred from terminating an employee for reporting a violation of state policy as defined by N.C. Gen. Stat.

§ 126-84 (2005). N.C. Gen. Stat. § 126-85 (2005). No employee of a state agency who serves in a supervisory capacity may terminate an employee for reporting a violation of state policy. *Id.*

On 28 January 2004, plaintiff was terminated from her employment with ARHS by Parks. Plaintiff claims her termination is a violation of the above referenced statutes ("the Whistleblower Act"). *See* N.C. Gen. Stat. § 126-84, *et seq.* (2005). Defendants, however, argue that plaintiff was in fact terminated for breaching her confidentiality obligations, which defendants characterized as "unacceptable personal conduct[.]"

In November 2003, Parks told plaintiff that ARHS would terminate the agency's safety director, "L," an employee with thirty years' service to ARHS.[1] According to plaintiff, Parks informed her that a member of ARHS's executive board wanted to terminate L because L had not done his job in thirty years. Plaintiff also stated that Parks told her that L had been placed in the position of safety director until he could retire, and it was time to let L go. Plaintiff told Parks that there was no cause to fire L, and she did not want to be part of any termination proceeding against him.

During ARHS's executive board meeting, the discussion of terminating L came up. Plaintiff asked to be excused from the meeting and she was.

According to plaintiff, in December 2003, ARHS's personnel consultant, Sylvia Johnson ("Johnson"), told her that a reduction in work force would be used to terminate L. Plaintiff told Johnson that she thought such action was illegal and wrong, and she did not want to be part of any termination proceedings against L. Plaintiff also stated that she was warned not to meddle with the board's actions to terminate L, as the board was behind the decision.

On 19 December 2003, L met with Parks offsite in order that, according to plaintiff, she would not be involved in the termination. At the meeting, L was terminated. According to plaintiff, Parks informed L that if anyone else became involved with his termination that they were putting their jobs at risk.

On 6 January 2004, plaintiff met with Parks and Johnson. According to plaintiff, she told them that if there was litigation

---

1. In order to comply with the protective order entered by the trial court, ARHS employees whose confidential information is discussed are referenced by their last initial only.

between defendants and L, she would testify truthfully and felt that she needed her own legal representation. Johnson, however, testified that plaintiff provided little context as to why the meeting was being held and that she continually sought reassurances that her job would be protected were L to "do something." According to Johnson, Parks reassured her that her job would be protected. Johnson also said that there was no discussion as to whether plaintiff would be provided with legal representation were L to bring an action because they were unaware as to what L was planning. Plaintiff was ultimately terminated on 22 January 2004.

Defendants contend plaintiff was terminated for violating confidentiality requirements imposed by the Health Information Portability and Accountability Act ("HIPAA") and agency policy. Defendants' evidence is summarized below.

In January 2004, Parks was notified by Dennis Harrington ("Harrington") of the Department of Health and Human Services ("DHHS") of suspected violations of state and local law involving plaintiff and Allen Jones ("Jones"). According to Parks, he learned that during December 2003 confidential patient health information had been illegally generated at ARHS at plaintiff's direction. The reports contained confidential information for Medicaid clinical services provided at another county health department, the Martin Tyrrell Washington District Health Department ("WHD"). According to Parks, the reports indicated that WHD had approximately 1.6 million dollars in Medicaid funds which had gone uncollected. The records were given by plaintiff to Jones and contained plaintiff's handwritten notes.

Jones took the documentation to WHD and told its director, Keith Patton ("Patton"), that he would assist them in collecting the money owed in exchange for twenty-five percent of the funds collected. Jones told Patton that he received the documentation from ARHS and that it had been reviewed and given to him by plaintiff.

In January 2004, Patton logged a formal complaint against ARHS. The complaint alleged that ARHS staff had improperly accessed confidential patient information in the WHD. After meeting with state representatives about the incident, Parks understood that plaintiff's actions violated HIPAA, state, and local privacy laws.

After receiving assurances that plaintiff had violated the law from Jill Moore, a specialist with the Institute of Government, Parks sched-

uled a pre-dismissal conference with plaintiff. At the conference, plaintiff did not deny the allegations against her and conceded that she had written the summaries of the reports and given them to Jones. Defendants then terminated plaintiff.

Plaintiff raises the following issues for this Court's review: (1) whether the evidence establishes that plaintiff's conduct was protected under the Whistleblower Act; and (2) whether the evidence shows that defendants' reason for termination was a pretext for firing plaintiff for protected conduct.

We review a trial court's grant of summary judgment *de novo*. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law.' " *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (alteration in original) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). "Evidence presented by the parties is viewed in the light most favorable to the non-movant." *Id.*

I.

[1] The North Carolina Whistleblower Act, N.C. Gen. Stat. §§ 126-84 to 88 (2005), requires a plaintiff to prove the following three essential elements by a preponderance of the evidence in order to establish a *prima facie* case: "(1) that the plaintiff engaged in a protected activity, (2) that the defendant took adverse action against the plaintiff in his or her employment, and (3) that there is a causal connection between the protected activity and the adverse action taken against the plaintiff." *Newberne v. Department of Crime Control & Pub. Safety*, 359 N.C. 782, 788, 618 S.E.2d 201, 206 (2005).

We first address whether plaintiff, taking the evidence in the light most favorable to her, engaged in protected conduct.[2] To be protected, the whistleblowing activity must constitute a report about "matters affecting general public policy." *Hodge v. N.C. Dep't of Transp.*, 175 N.C. App. 110, 117, 622 S.E.2d 702, 707 (2005). The Whistleblower Act establishes a state policy to

encourage its employees to report violations of state or federal law, rules or regulation; fraud; misappropriation of state re-

---

2. The parties do not dispute the second element, as defendants terminated plaintiff's employment.

sources; "[s]ubstantial and specific danger to the public health and safety; or [g]ross mismanagement, a gross waste of monies, or gross abuse of authority;" and it further protects State employees from intimidation or harassment when they report on "matters of public concern." N.C. Gen. Stat. § 126-84 (2003). Employees who report activities under this statute are protected from retaliation under N.C. Gen. Stat. § 126-85 (2003).

*Id.* at 116, 622 S.E.2d at 706 (alterations in original).

In the instant case, plaintiff alleges that her protected activity was announcing that she intended to testify truthfully were L to bring litigation. In *Hodge*, the "plaintiff's 'report' was [a] lawsuit seeking reinstatement to his former position." *Id.* at 117, 622 S.E.2d at 707. This Court held that the lawsuit did not concern matters affecting general public policy because it "related only tangentially at best to a potential violation of the North Carolina Administrative Code." *Id.* This Court has therefore declined "to extend the definition of a protected activity to individual employment actions that do not implicate broader matters of public concern." *Id.* In so concluding, the Court in *Hodge* reasoned that "the General Assembly [did not] intend[] N.C. Gen. Stat. § 126-84 to protect a [s]tate employee's right to institute a civil action concerning employee grievance matters." *Id.*

Like the plaintiff in *Hodge*, plaintiff in this case has made only conclusory allegations that L's termination was the result of "unlawful age discrimination, and a violation of the State Personnel Act." Nowhere are there specific statements made by plaintiff that L was fired due to his age; instead, plaintiff concedes that L had a history of poor job performance, that plaintiff herself advocated his termination in prior years, and that defendants did not violate their own policy by not offering a new position to L. Ultimately, the dispute between the parties is an individual termination action that does not implicate broader matters of public concern.

This Court has applied whistleblower protection to those "who allege retaliation after cooperating in investigations regarding misconduct by their supervisors[.]" *Id.* at 116-17, 622 S.E.2d at 706 (citing *Caudill v. Dellinger*, 129 N.C. App. 649, 655, 501 S.E.2d 99, 103 (1998) "(employee terminated after cooperating with State Bureau of Investigation regarding misconduct by her supervisor was able to make out a *prima facie* case under N.C. Gen. Stat. § 126-84)").

Unlike in *Caudill*, however, plaintiff merely stated that she would testify truthfully and never actually testified or cooperated with

any investigating agency regarding the termination of L. Moreover, *Caudill* held that "[i]t is the public policy of this state that citizens cooperate with law enforcement officials in the investigation of crimes." *Caudill*, 129 N.C. App. at 657, 501 S.E.2d at 104. In the instant case, there has been no investigation or substantiated allegations that the termination of L was in violation of any state laws or regulations.[3] Instead, this case is more in line with *Hodge*: It involves an individual employment action, the termination of L, and there is no evidence that defendants engaged in "[g]ross mismanagement" or a "violation of State or federal law, rule or regulation" that would afford plaintiff protection under the Whistleblower Act. *See* N.C. Gen. Stat. § 126-84(a) (statement of policy). Instead, plaintiff could have filed a grievance with defendants after her termination. Accordingly, plaintiff's conduct, even construing the evidence in her favor, is insufficient to establish a *prima facie* case, and plaintiff's assignment of error as to this issue is rejected. As plaintiff is unable to establish that her conduct was protected within the meaning of the Act, we need not address whether the other elements of a *prima facie* case have been established. However, in the alternative, we also discuss in Section II of this opinion whether defendants presented a legitimate, non-retaliatory reason for terminating plaintiff.

## II.

**[2]** Once a plaintiff has established a *prima facie* case, the employer must proffer a legitimate, non-retaliatory reason for firing the plaintiff. *Wells v. N.C. Dep't of Corr.*, 152 N.C. App. 307, 317, 567 S.E.2d 803, 811 (2002). At that point, " 'the burden [of production] shifts to the plaintiff to present evidence, raising a genuine issue of fact, that his [engagement in a protected activity] . . . [was] *a substantial causative factor* in the adverse employment action, or provide an excuse for not doing so.' " *Id.* (citation omitted) (alterations in original).

Thus, even if we assume that plaintiff has established a *prima facie* case, we must determine whether defendant offered a legitimate, non-retaliatory reason to terminate plaintiff and whether plaintiff met her burden of production. Our review of the evidence reveals that defendant offered such a reason and plaintiff is unable to raise a genuine issue of material fact that the termination was a pretext for protected activity.

---

3. Plaintiff's continued reference to the termination of L as "illegal" does not, absent some support of that allegation in the record, make the termination unlawful.

This Court has held that where a plaintiff acknowledges that an employer had "legitimate explanations for the actions [plaintiff] alleged were retaliatory[,]" summary judgment in favor of the employer is appropriate. *Hodge,* 175 N.C. App. at 118, 622 S.E.2d at 707. The undisputed evidence shows that plaintiff committed a breach of confidentiality by disclosing patient records to Jones. Jones later attempted to use those records for personal, monetary gain. Plaintiff acknowledged in her deposition that she gave Jones the stack of documents. Moreover, when confronted by Parks regarding the disclosure of confidential patient information, plaintiff did not dispute the allegation and acknowledged that she also gave Jones a handwritten summary of the information. Plaintiff also admitted that she did not generate the information as part of her job. Indeed, she knew that part of her job description was to safeguard such information and that HIPAA made it illegal for her to access the information when it was not necessary for her job duties. She also conceded that it was not part of her job description to be concerned as to what Medicaid funds were owed WHD.

In addition to plaintiff's own remarks, defendants have presented evidence that terminating plaintiff due to the breach of confidentiality was appropriate. Harrington, from DHHS, characterized plaintiff's conduct as a gross violation of law such that any disciplinary action short of termination would have been unacceptable. Harrington also said that plaintiff's disclosure violated the ethical duty imposed on county health departments and was "a severe breach of trust between the ARHS and its patients." Additionally, Curtis Dickson, the Director for Hertford County Public Health Authority, and Johnson, the former Regional Personnel Director for DHHS, both testified that plaintiff's actions were illegal and Johnson advised Parks that plaintiff committed a dismissible offense. Finally, the evidence shows that the breach of confidentiality was brought to Parks's attention by Patton, a third party with no knowledge of L's termination. This is not a case where defendants were creating a false paper trail in order to justify their termination of plaintiff on pretextual grounds.

We find additional support for our decision in *Shoaf v. Kimberly-Clark Corp.,* 294 F. Supp. 2d 746 (M.D.N.C. 2003). In that case, the plaintiff filed an employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Id.* at 749. The plaintiff admitted to disclosing information in violation of his confidentiality agreement with the defendant. *Id.* at 752. The *Shoaf* Court then granted summary judgment because the evidence presented

showed that defendant "focused only upon Plaintiff's breach of his duties of confidentiality and loyalty owed to Defendant as a basis for their decision to discharge Plaintiff." *Id.* at 758 (footnote omitted). The same circumstances being presented here, we thus conclude that defendants have established a legitimate non-retaliatory reason for their adverse employment decision. Accordingly, the burden now shifts to plaintiff to establish that her engagement in protected activity was a substantial causative factor of her termination.

[3] In order to raise a factual issue regarding pretext, "the plaintiff's evidence must go beyond that which was necessary to make a *prima facie* showing by pointing to specific, non-speculative facts which discredit the defendant's non-retaliatory motive." *Wells,* 152 N.C. App. at 317, 567 S.E.2d at 811. Plaintiff has failed to carry this burden.

In the instant case, the only direct evidence presented by plaintiff that defendants terminated her employment in retaliation for her opposition to L's release was a statement to L by Parks not to discuss his termination with anyone as it could cost them their jobs. That comment, however, was taken out of context. During L's and Parks's meeting together, L had requested a copy of his personnel file. At that point, Parks instructed L to go through appropriate channels for any information he needed because accessing such information through employees that did not have authorization to such information could cost them their jobs. L corroborates this during his deposition when he stated, in relation to the conversation he had with Parks, that: "I know it was in reference to some personnel issues and that I should keep those things in confidence, and that it could possibly cause other people problems." This evidence fails to discredit defendants' legitimate, non-retaliatory reason to terminate plaintiff.

Plaintiff argues that there was a close temporal proximity between her protected activity and her firing. This circumstantial evidence, plaintiff argues, is sufficient to prove retaliatory termination. In support of this proposition, plaintiff cites this Court's opinion in *Caudill.* In that case, the plaintiff was terminated "almost immediately" upon the defendant learning that the plaintiff was cooperating with the State Bureau of Investigation. *Caudill,* 129 N.C. App. at 655, 501 S.E.2d at 103. In this case, plaintiff was terminated ten weeks after her initial complaint and fourteen days after her last complaint regarding L's termination. More importantly, the plaintiff in *Caudill* forecasted evidence that she was performing her job satisfactorily up until the termination. Such is not the case here. As discussed above,

defendants have produced substantial evidence that plaintiff was not performing her job satisfactorily because she had disclosed confidential information to Jones. Because plaintiff has not presented evidence that she was performing her job satisfactorily, she is unable to rely on the temporal proximity of her termination after her protected activity as sufficient circumstantial evidence to prove retaliatory termination. Accordingly, plaintiff's assignments of errors are rejected, and the trial court's grant of summary judgment is affirmed.

In summary, we hold that plaintiff's conduct was not protected under the Whistleblower Act. Alternatively, we hold that plaintiff has failed to raise a factual issue as to whether defendants' termination of her employment was pretexual. Accordingly, the ruling of the trial court is affirmed.

Affirmed.

Judges McGEE and BRYANT concur.